IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION


DWIGHT RODGERS,                    )
                                   )
              PLAINTIFF,           )
                                   )
vs.                                )        CIVIL ACTION NO:
                                   )        2:06-CV-1067-WKW-SRW
CRACKER BARREL OLD                 )
COUNTRY STORE, INC.,               )
                                   )
              DEFENDANT.           )


## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Jennifer M. Busby (BUS009)
Ashley H. Hattaway (HAT007)
Attorneys for Cracker Barrel Old Country Store, Inc.


BURR & FORMAN LLP
3400 Wachovia Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF UNDISPUTED FACTS ..........................................................2

      A.    Cracker Barrel Is An Equal Opportunity Employer ...................................2

      B.    Plaintiff Was Hired Based On A False Employment History.....................2

      C.    Plaintiff's Employment History With Cracker Barrel ...............................4

      D.    Plaintiff's Performance Problems In Gardendale ......................................5

            1.    Plaintiff Performed Poorly In Objective Financial Areas...........5

            2.    Plaintiff Also Was A Poor Leader ..............................................6

      E.    Plaintiff's Supervisors Counseled Him But He Did Not Respond...........7

      F.    Plaintiff's Transfer To Montgomery And His Continued Poor Performance .........9

      G.    Plaintiff's Termination .............................................................................12

      H.    Plaintiff's Allegation Regarding The Tommie Patterson Incident ..........13

      I.    Plaintiff Did Not Report Discrimination Or Retaliation To Cracker Barrel..........16

III.  ARGUMENT .......................................................................................................17

      A.    Plaintiff's Title VII Race Discrimination Claim Is Due To Be Dismissed ...........17

            1.    Plaintiff Cannot Establish A Prima Facie Case .........................17

            2.    Plaintiff Cannot Establish That Cracker Barrel's Legitimate, Non-Discriminatory Reasons For Its Actions Were Pretext ..............................20

      B.    Plaintiff's Title VII Retaliation Claim is Due To Be Dismissed ..............22

      C.    Plaintiff's Section 1983 Claim Must Be Dismissed.................................27

      D.    Any Harassment Claim Should Be Dismissed.........................................28

      E.    Plaintiff's Claim For Damages Is Limited By After-Acquired Evidence .............31

IV.   CONCLUSION.....................................................................................................32

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DWIGHT RODGERS, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO: |
| | ) | 2:06-CV-1067-WKW-SRW |
| CRACKER BARREL OLD | ) | |
| COUNTRY STORE, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

COMES NOW Cracker Barrel Old Country Store, Inc. ("Cracker Barrel") and submits this Brief in support of its Motion for Summary Judgment as to all claims asserted by plaintiff:

## I.      INTRODUCTION

Dwight Rodgers, an African-American, was a General Manger for Cracker Barrel for approximately one year, during which he had numerous performance problems. Rodgers' supervisor began counseling him about these problems soon after he became General Manager, and after numerous warnings, he terminated Rodgers' employment. Plaintiff does not dispute his poor performance rather he has numerous excuses, and apparently now blames his poor performance on alleged race discrimination, although he never claimed such during his employment. After his termination, Rodgers filed an EEOC charge alleging race discrimination and retaliation. The EEOC found no cause to believe that discrimination or retaliation had occurred. On February 4, 2005, Rodgers filed this lawsuit. Count One of his complaint alleges "intentional race discrimination." Count Two of his complaint alleges "disparate treatment in violation of Title VII." Plaintiff's claims should be dismissed as a matter of law.

## II.     STATEMENT OF UNDISPUTED FACTS

### A.     Cracker Barrel Is An Equal Opportunity Employer.

At all times during plaintiff's employment, Cracker Barrel had in place published, enforced equal employment opportunity, harassment, retaliation and open door policies. (Alexander Aff. ¶ 3).[1]  Under these policies, employees who believe they have been subjected to discrimination, harassment or retaliation can advise a Manager, District Manager, or the Employee Relations department at a toll free Hotline number. (Alexander Aff. ¶ 4).  Plaintiff was trained on these policies, kept copies of them, and agreed to abide by them.  (Plt. Depo., p. 94, ln. 3-14, p. 360, ln. 19 - p. 361, ln. 10).[2]  His supervisor, District Manager Rich Alexander, is a long time employee of Cracker Barrel and was also trained in the policies.  (Alexander Aff. ¶¶ 2-5).

### B.     Plaintiff Was Hired Based On A False Employment History.

On June 21, 2002, plaintiff sent his resume to Cracker Barrel and a recruiter interviewed him.  (Plt. Depo., p. 48, ln. 12 - p. 50, ln. 15, p. 65, ln. 13-23; Plt.'s Resume (Plt. Depo. Ex. 1)).  He claimed to be working with RTM Restaurant Group at the time, but after plaintiff's termination Cracker Barrel learned that in fact he had been fired from there.  (Plt. Depo,. p. 60, ln. 6 - p. 62, ln. 14, p. 66, ln. 1-12; RTM Records).[3]  Based on his resume, Cracker Barrel hired him in July, 2002 into its Management-In-Training Program.  (Plt. Depo., p. 50, ln. 13-22, p. 65, ln. 13-23, p. 67, ln. 6-13, p. 101, ln. 13-19; Alexander Aff. ¶ 7).

---

[1]     The Affidavit of Rich Alexander and Exhibits 1-8 to Affidavit are attached as Ex. A to Cracker Barrels' Evidentiary Submission.

[2]     The Deposition of Dwight Rodgers and Exhibits 1-15 to the Deposition are attached as Ex. B to Cracker Barrel's Evidentiary Submission.

[3]     RTM Records re: Plaintiff's Employment & Termination are attached as Ex. C to Cracker Barrel's Evidentiary Submission.

Cracker Barrel has learned during the course of this litigation that plaintiff's resume was false. For example, plaintiff represented in his resume that he has a bachelor's degree. (Plt.'s Resume). However, plaintiff was lying -- he does not have a college degree. (See Plt.'s Am. Resp. to Interrog. #10).[4] In his resume and in his deposition, plaintiff claimed that he worked at RTM until he was recruited away by Cracker Barrel. (Plt. Depo., p. 59, ln. 14 - p. 60, ln. 16, p. 64, ln. 2-22). He claimed in his deposition that he was not terminated from RTM. (Plt. Depo., p. 66, ln. 8-12, p. 68, ln. 13 - p. 69, ln. 4). In his responses to Cracker Barrel's interrogatories, he claimed that he left RTM because he "sought another position." (Plt.'s Resp. to Interrog. #3). These representations are lies; the truth is that plaintiff was fired from RTM for violations of company policy. (RTM Records, #6).

Plaintiff claimed in his resume that he also worked at Bojangles. (Plt.'s Resume). Plaintiff testified in his deposition that he never received any written disciplinary action and was never suspended. (Plt. Depo., p. 67, ln. 14 - p. 68, ln. 12). The truth is that plaintiff received at least four written warnings at Bojangles for actions ranging from poor performance to not following procedures, including a five-day suspension. (Bojangles Records, ## 23, 33, 39-41).[5]

Plaintiff claimed in his discovery responses that he left Bojangles because he "sought another position." (Plt.'s Resp. to Interrog. #3). He then testified at his deposition that he was not terminated from Bojangles rather he left because they switched from corporate to franchise. (Plt. Depo., p. 47, ln. 1 p. 48, ln. 6, p. 68, ln. 13 - p. 69, ln, 4). This, too, is a lie; the truth is that plaintiff was fired from Bojangles for making misrepresentations. (Bojangles Doc #31). If

---

[4]    Excerpts of Plaintiff's Interrogatory Responses are attached as Ex. D to Cracker Barrel's Evidentiary Submission.

[5]    Bojangles' Work Incident Reports re: Plaintiff are attached as Ex. E to Cracker Barrel's Evidentiary Submission.

Cracker Barrel had known the truth about plaintiff's educational and employment history, it would not have hired him. (Alexander Aff. ¶ 7).

### C.    Plaintiff's Employment History With Cracker Barrel.

When plaintiff completed his management training in October, 2002, he became an Associate Manager in the Athens, Georgia store. (Plt. Depo. p. 101, ln. 13 - p. 104, ln. 15, p. 107, ln. 12-22; Alexander Aff. ¶ 8). Plaintiff was promoted to the position of Senior Associate Manager in July, 2004, based in part on the approval of the Regional Vice President Ron Phillips. (Plt. Depo., p. 107, ln. 22 - p. 109, ln. 2, p. 119, ln. 16 - p. 120, ln. 1). Ron Phillips was the Regional Vice President during plaintiff's entire employment with Cracker Barrel. (Plt. Depo., p. 106, ln. 12-19). The General Manager of the store was responsible for all areas of operation, the performance of the store and the associates. (Plt. Depo., p. 110, ln. 18 - p. 112, ln. 5). The General Manager would assign specific tasks to the Associate Managers such as managing food costs or scheduling employees; however, the General Manager retained the ultimate responsibility for making sure that the store performed to expectations. (Plt. Depo., p. 110, ln. 18 - p. 112, ln. 5).

As an Associate Manager and Senior Associate Manager, plaintiff was evaluated by the General Manager at the Athens store, Tom Speziale. (Plt. Depo., p. 102, ln. 1-10, p. 109, ln. 3- p. 110, ln. 18; Alexander Aff. ¶ 10; 01/30/04 Evaluation (Ex. 2 to Alexander Aff.)). He received a rating of "3" out of "5" on those evaluations. (01/30/04 Evaluation, p. 14). On plaintiff's January 30, 2004 evaluation, the last period during which Mr. Speziale worked with plaintiff on a regular basis, he noted that plaintiff had learned several specific tasks but still needed to learn how to master running the entire unit. (Plt. Depo., p. 110, ln. 3-17; 01/30/04 Evaluation, p. 16).

Plaintiff was promoted to General Manager on September 4, 2004. (Plt. Depo., p. 119, ln. 6-21, p. 121, ln. 3-10; Alexander Aff. ¶ 11). He had applied for a General Manager position

in Georgia but did not obtain that position; however, Rich Alexander, the Restaurant District Manager over the Gardendale, Alabama store invited him to apply for a General Manager position there.  (Plt. Depo., p. 121, ln. 11 -p. 123, ln. 4; Alexander Aff. ¶¶ 2, 11-12).   He interviewed for that position with Mr. Alexander; James Smith, another Restaurant District Manager; a Retail District Manager; and Ron Phillips.  (Plt. Depo., p. 123, ln. 5 - p. 124, ln. 2).  Following the interview, Mr. Alexander selected plaintiff for the position, over Caucasian candidates, and Ron Phillips approved it.  (Plt. Depo., p. 124, ln. 3-12, p. 125, ln. 3-21; Alexander Aff. ¶¶ 11-12).

   **D.     Plaintiff's Performance Problems In Gardendale.**

   **1.     Plaintiff Performed Poorly In Objective Financial Areas.**

   The Gardendale store performed poorly in many objective financial areas under plaintiff's management, such as guest complaints, food costs, net operating income, restaurant sales growth and retail sales.  (Plt. Depo., p. 138, ln. 13 - p. 139, ln. 4; 01/28/05 Evaluation (Plt. Depo. Ex. 2)).  Plaintiff admits that his financial performance as General Manager was not good and although he tried to blame his predecessor he admits that he was responsible for the store's performance while he was the General Manager.  (Plt. Depo., p. 138, ln. 13 - p. 139, ln. 16, p. 151, ln. 5 - p. 152, ln. 21, p. 156, ln. 11 - p. 157, ln. 8).

   He also tried to blame the other managers in the store for his poor performance.  (Plt. Depo., p. 156, ln. 2-10).  He said "they didn't perform well, but they weren't totally inadequate." (Plt. Depo., p. 129, ln. 15 - p. 130, ln, 2).  The truth is that the management team that was in Gardendale was very experienced.  (Plt. Depo., p. 154, ln. 1 - p. 155, ln. 8; Alexander Aff. ¶ 13).  There was one Senior Associate Manager, Tommie Patterson, and three Associate Managers, Lisa Claburn, Carol Willis and Carolyn Freeman.  (Plt. Depo., p. 126, ln. 6 - p. 127, ln. 13).  Their experience was as follows:  Patterson (Manager - 4 years); Claburn (Cracker Barrel - 8

years, Manager - 2 years); Freeman (Cracker Barrel - 8 years, Manager - 2 years); and Willis (Cracker Barrel - 12 years, Manager - 8 years).  (Alexander Aff. ¶ 13).  Moreover, the undisputed fact is that although the Associate Managers handled specifically assigned duties, plaintiff was ultimately responsible for making sure that the store met its objective standards.  (Plt. Depo., p. 130, ln. 14 - p. 134, ln. 5, p. 184, ln. 21 - p. 185, ln. 9; Alexander Aff. ¶ 14).

### 2.    Plaintiff Also Was A Poor Leader.

Plaintiff also failed at leading the management team in Gardendale.  (Plt. Depo., p. 140, ln. 19 - p. 141, ln. 14; 01/28/05 Evaluation, p. 12 (Plt. Depo. Ex. 2)).  Plaintiff admits that the management team was unhappy with changes he made and that there were communication issues between them.  (Plt. Depo., p. 142, ln. 6 - p. 144, ln. 2).  For example, plaintiff testified that "I did not accept the feedback that they apparently were accustomed to being able to give."  (Plt. Depo. p. 143, ln. 23 - p. 144, ln. 2).  The managers complained to Rich Alexander about the issues they had with plaintiff; including that plaintiff did not seem to have clear direction for the store; that he did not communicate well with them; that he spent too much time in the office; that he was not at work enough and sometimes called off at the last minute; that these absences caused them to work more; that he did not follow through with plans and paperwork; and that he did not hold employees accountable for their actions.  (Plt. Depo., p. 144, ln. 9 - p. 145, ln. 3, p. 146, ln. 19 - p. 147, ln. 13; Alexander Aff. ¶ 15).

Mr. Alexander held a meeting with the Associate Managers on March 21, 2005 to listen to their concerns.  (Plt. Depo., p. 164, ln. 13 - p. 165, ln. 13; Alexander Aff. ¶ 17).  Following are some of the concerns they expressed:

- Plaintiff's lack of communication with the managers.
- Confusion among the management team.
- Plaintiff's poor attendance and personal distractions.
- Plaintiff's double standard - he did not follow his own instructions.

- Plaintiff's lack of courtesy towards the managers.
- Plaintiff's lack of effort and commitment to the job.
- Plaintiff's failure to listen to the opinions of the managers.
- Plaintiff's failure to follow up with policies and procedures.

(Alexander Aff.¶ 17; 03/22/05 E-mail (Ex. 3 to Alexander Aff.)).  Following this meeting, Mr. Alexander met with plaintiff about the managers' concerns.  (Plt. Depo., p. 166, ln. 11-23, p. 168, ln. 6 - p. 169, ln. 15; Alexander Aff. ¶ 17).

### E.    Plaintiff's Supervisors Counseled Him But He Did Not Respond.

Plaintiff admits that it was his supervisor's job to evaluate and coach him if he was not meeting company standards and that his supervisor had to address what he viewed as the root of the problem.  (Plt. Depo., p. 185, ln. 17 - p. 87, ln. 1-10).  When Mr. Alexander discovered plaintiff's performance problems, he began to informally coach and counsel plaintiff about those problems.  (Plt. Depo., p. 114, ln. 8 - p. 116, ln. 3, p. 118, ln. 6-15, p. 141, ln. 15 - p. 142, ln. 5; Alexander Aff. ¶ 18).  Plaintiff admits that from the start of his tenure as GM, he and Mr. Alexander met numerous times about communication issues and the Associate Managers' frustrations with plaintiff's leadership, such as his lack of respect, credibility, work ethic, passion for the job, and vision statement.  (Plt. Depo., p. p. 141, ln. 15 - p. 143, ln. 2, p. 157, ln. 22 - p. 158, ln. 14 - p. 160, ln. 19, 01/28/05 Evaluation, p. 12 (Plt. Depo. Ex. 2)).  Plaintiff also admits that he and Mr. Alexander had several discussions about the complaint that he was not at work enough.  (p. 146, ln. 19 - p. 147, ln. 13).  At least as early as December, 2004, Mr. Alexander shared his concerns about plaintiff's performance with Ron Phillips.  (Alexander Aff. ¶ 19; February 2005 E-Mails (Ex. 4 to Alexander Aff.)).  They met with plaintiff at that time to address his poor performance and to counsel him about his leadership skills.  (Id.).

Plaintiff received his first evaluation in April, 2005, and it covered the period of September, 2004 through January, 2005, which were his first five months in the General

Manager position.  (Plt. Depo., p. 136, ln. 2 - p. 137, ln. 20; Alexander Aff. ¶ 22; 01/28/05

Evaluation (Plt. Depo. Ex. 2)).  Plaintiff received a "2" out of "5" on that evaluation.  (01/28/05

Evaluation, p. 9).  He earned poor scores in the categories of guest complaints, food costs, net

operating income, restaurant sales growth and retail sales, which are objective scores.  (01/28/05

Evaluation).    In plaintiff's evaluation, Mr. Alexander also addressed plaintiff's poor

communication with his managers and poor leadership skills.  (Plt. Depo., p. 140, ln. 19 - p. 141,

ln. 14; 01/28/05 Evaluation, p. 12).  Mr. Alexander counseled plaintiff that he needed to become

more approachable, listen, give clear direction and improve his planning skills.  (01/28/05

Evaluation, p. 12).  Mr. Alexander stated "If you follow your plan, listen and quit being so

defensive/argumentative when confronted you can succeed as the GM of unit #237 Gardendale.

You have my 100% support in your endeavors to make some very important behavior changes."

(01/28/05 Evaluation, p. 12).

Plaintiff did not take Mr. Alexander's advice to study his own behaviors and make a plan

of action to improve his performance, even though other managers and human resources

professionals at Cracker Barrel tried to help him.  (Plt. Depo., p. 147, ln. 14 - p. 150, ln. 11, p.

177, ln. 1 - p. 178, ln. 4).  He continued to be defensive and argumentative and would not take

responsibility for his actions.  (Plt. Depo., p. 178, ln. 5 - p. 181, ln. 9; Alexander Aff. ¶ 21).

Plaintiff denied that he had any bad behaviors to address, but instead set out to prove that his

Associate Managers were all at fault.  (Plt. Depo., p. 178, ln. 16 - p. 181, ln. 9).

After the evaluation, plaintiff met again with Mr. Alexander and Mr. Phillips.  (Plt.

Depo., p. 181, ln. 19 - p. 182, ln. 1, p. 187, ln. 11 - p. 188, ln. 4; Alexander Aff. ¶ 23).  Rather

than addressing the concerns about his performance, plaintiff disagreed with Mr. Alexander

allowing the managers to express their concerns to him.  (Plt. Depo., p. 182, ln. 2-21, p. 183, ln.

16-21). Plaintiff admits that he never resolved his problems with the managers, although he testified that their performance improved. (Plt. Depo., p. 184, ln. 7-15). In plaintiff's words, "towards the end, their behaviors actually was not as vile but still needed addressing." (Plt. Depo., p. 184, ln. 13-15).

### F. Plaintiff's Transfer To Montgomery And His Continued Poor Performance.

Although Cracker Barrel could have fired plaintiff for his failure to perform in Gardendale, it gave him a fresh start by allowing him to transfer to the Montgomery store, which was a new store, during the first week of June 2005. (Plt. Depo., , p. 250, ln. 9 - p. 252, ln. 2-4; Alexander Aff. ¶ 24). He did not perform well in this store either. (Plt. Depo., p. 252, ln. 5-15, p. 280, ln. 3-11; Alexander Aff. ¶ 25). From June through August, sales were below expectations and were continually decreasing. (Id.). There also were an unacceptable number of guest complaints, which likely contributed to the decreasing sales, and labor costs and food costs were excessive. (Id.). Plaintiff does not dispute that the issues existed, and he admits that the store's performance for June to August was his responsibility. (Plt. Depo., p. 157, ln. 15-21).

There were four Associate Managers and one senior Associate Manager in the Montgomery store. (Plt. Depo., p. 252, ln. 16-23, p. 258, p. 6-9). All of them had prior experience at other Cracker Barrel stores. (Plt. Depo., p. 258, ln. 6-18). He thought that "personally they were okay" but that "professionally, that was not the setting for them." (Plt. Depo., p. 253, ln. 3-5). Cracker Barrel also provided plaintiff with a Store Opening Supervisor and a Retail Opening Supervisor and their team of people to help plaintiff during the first two weeks following the store opening. (Plt. Depo., p. 398, ln. 18 - p. 399, ln. 20).

On June 17, 2005, Mr. Alexander documented in a counseling memo and discussed with plaintiff some concerns he had about his performance since transferring to Montgomery. (Plt. Depo., p. 361, ln. 17 - p. 362, ln. 23, p. 364, ln. 13-19; Alexander Aff. ¶ 27; 06/17/05 Counseling

Memo (Plt. Depo. Ex. 13)).  Mr. Alexander pointed out in this counseling that plaintiff had asked for the transfer to Montgomery, and that before granting the transfer Mr. Alexander and Mr. Phillips discussed with him in detail their concerns about his performance, particularly in regards to credibility and operations.  (06/17/05 Counseling Memo).  Mr. Alexander then noted some of plaintiff's concerning behavior such as he was late to work; did not notify him of schedule changes; spent too much time in the office; called an Associate Manager into work so he could run a personal errand; left the store understaffed; and did not prioritize his duties.  (Id.).

In response to this counseling, plaintiff wrote Ron Phillips a letter with excuses for his behavior.  (Plt. Depo. p. 364, ln. 1 - p. 365, ln. 10; Plt. Letter to Phillips (Plt. Depo. Ex. 14)).  He noted that his personal and professional characteristics as the Gardendale General Manager had been questioned and "rightfully so."  (Plt. Letter to Phillips).  He then disagreed with Mr. Alexander writing him up on June 17, although he admitted to at least some of Mr. Alexander's concerns.  (Id.).  For example, he admitted that he did not inform Mr. Alexander that he changed his schedule on June 17 so that when Mr. Alexander drove from Birmingham to Montgomery to meet with him, he was not there.  (06/17/05 Counseling Memo; Plt. Letter to Phillips).  Mr. Phillips discussed plaintiff's concerns with Mr. Alexander but approved of the counseling.  (Alexander Aff. ¶ 27).  As plaintiff admits, Mr. Alexander could have given him an individual warning on each of the instances included in the memo and could have given him a final written warning at this time.  (Plt. Depo. p. 369, ln. 13 - p. 370, ln. 10).

On July 24, 2005, Mr. Phillips sent plaintiff an e-mail about nine guest complaints that had been received in eight days, which was unacceptable.  (Plt. Depo., p. 285, ln. 12 - p. 288, ln. 2; July 2005 E-mails, p. 2 (Plt. Depo. Ex. 7)).  Mr. Phillips told plaintiff to respond to him by July 27 with a plan to improve operations, but plaintiff did not respond.  (July 2005 E-mails, p.

2).  Mr. Phillips e-mailed him about the issue again on July 31.  (Id., pp. 1-2).  Plaintiff responded to the e-mail that day admitting the delay in his response and admitting that "a unit is only as strong as its leader."  (Id., p. 1).  He admitted that Cracker Barrel was making efforts to help him improve his performance, such as sending other managers in the district to help train employees, and that Mr. Alexander had been coaching and developing him.  (Id.).  Mr. Alexander and Mr. Phillips also went to Montgomery and met with plaintiff about these issues.  (Plt. Depo., p. 288, ln. 17 - p. 289, ln. 10).  Plaintiff admits that they could have given him a written discipline.  (Plt. Depo. p. 370, ln. 6-10).

On August 6, 2005, Mr. Alexander gave plaintiff a warning about 27 guest complaints in 10 weeks and continually decreasing sales.  (Plt. Depo., p. 365, ln. 21 - p. 366, ln. 14, 08/06/05 Alexander Memo (Plt. Depo. Ex. 15)).  Mr. Alexander also addressed plaintiff's lack of urgency in responding to these complaints and noted the many conversations that he already had with plaintiff on this matter.  (08/06/05 Alexander Memo).  Mr. Alexander also outlined some steps that plaintiff could take to address the matter.  (Id.).  Plaintiff admits that Mr. Alexander could have made this warning a final written warning.  (Plt. Depo., p. 370, ln. 11-19).

On August 12, 2005, Mr. Alexander visited the Montgomery store while plaintiff and two other managers were on duty.  (08/12/05 Final Written Report, p. 1 (Plt. Depo. Ex. 6)).  He found food items that were not labeled or were expired but had not been discarded.  (Id.).  The managers, including plaintiff, should have caught these food items.  (Id.).  When Mr. Alexander expressed his concern to plaintiff, plaintiff blamed the Associate Managers.  (Id.).  Based on this experience and many other operational failings, Mr. Alexander issued plaintiff a final written warning.  (Id.).  In that warning, Mr. Alexander addressed the following issues:  (1) plaintiff's failure to set clear standards, role model them and hold the associates accountable to them; (2)

sales well below expectations and declining; (3) 29 guest complaints in 11 weeks; (4) food costs over goal for two months; (5) failure to meet the labor efficiency goals in any of the 11 weeks; and (6) managers failing to perform required duties.  (Id.).  Mr. Alexander warned plaintiff that immediate improvement was expected.  ((Id.).  Plaintiff does not deny all of these operational failings, but he blames everyone but himself - the employees, the trainers, the employees who projected the sales, the associate managers and the managers before him.  (Plt. Depo., p. 283, ln. 12 - p. 284, ln. 18).  But he admits that his supervisors had "always" discussed these issues with him.  (Plt. Depo., p. 284, ln. 19 - p. 285, ln. 6).

      **G.**    **Plaintiff's Termination.**

      Plaintiff was terminated on September 3, 2005 because his performance continued to fall below the expectations of the General Manager position.  (Plt. Depo., p. 295, ln. 18 - p. 296, ln. 7; 09/03/05 Termination Report (Plt. Depo. Ex. 8)).  For example, he failed to meet deadlines; failed to be appropriately responsive to the unacceptable number of guest complaints; and failed to take personal responsibility.  (09/03/05 Termination Report).  Plaintiff admits that he missed deadlines; for example, he admits not being prepared for a conference call and not e-mailing an outline for the call.  (Plt. Depo., p. 297, ln. 1 - p. 299, ln. 15; 09/03/05 Termination Report).  He admits that there were food quality issues.  (Plt. Depo., p. 303, ln. 9 - p. 305, ln. 3; 09/03/05 Termination Report, p. 2).  He does not dispute that he had an Associate Manager leave a voice mail for Mr. Alexander when he expected a personal call from plaintiff.  (Plt. Depo., p. 307, ln. 6-10; 09/03/05 Termination Report, p. 3).  He does not dispute that he was late sending information requested by Human Resources.  (Plt. Depo., p. 309, ln. 1 - p. 310, ln. 1; 09/03/05 Termination Report).  He admits that he missed a call on July 20 that Mr. Alexander expected

him to participate in.[6]  (Plt. Depo., p. 317, ln. 4-19; 09/03/05 Termination Report, pp. 3-4).  He

admits he was late to work.  (Plt. Depo., p. 322, ln. 11-14; 09/03/05 Termination Report, p. 4).

He admits that he was informed of these reasons for his termination.  (Plt. Depo., p. 296, ln. 2-7,

p. 300, ln. 3-17).  Mr. Alexander temporarily replaced plaintiff with an African-American whom

he hoped would apply for the permanent position, but he chose not to apply.  (Alexander Aff.

¶ 38).[7]

### H.    Plaintiff's Allegation Regarding The Tommie Patterson Incident.

In this lawsuit, plaintiff claims that despite undisputed performance problems, he was

terminated because he reported a comment made by Assistant Manager, Tommie Patterson, in

Gardendale about a funeral for his relative.   (Compl.).   Plaintiff claims that during his

employment as a General Manager at Gardendale, two of his aunts died.  (Plt. Depo., p. 97, ln.

16 - p. 100, ln. 5).  According to plaintiff, in March, 2005, he called the store and told Tommie

Patterson that he would not be in that day because his aunt died.  (Plt. Depo., p. 199, ln. 4 - p.

201, ln. 10).  Plaintiff had been off the previous day because he was ill, and he was scheduled to

be off the next two days.  (Plt. Depo., p. 195, ln. 10-23, p. 200, ln. 6 - p. 201, ln. 10).  He called

so that the store could plan for his absence to attend the funeral in South Carolina.  (Plt. Depo., p.

200, ln. 16 - p. 201, ln. 10).

---

[6]    Plaintiff claims he was moving on July 20 and could not get cell phone service from Birmingham to Montgomery (Plt. Depo., p. 317, ln. 4 - p. 320, ln. 14), but the U-Haul receipt showed that he moved on July 22nd.  (Alexander Aff. ¶ 34; U-Haul Receipt (Ex. 6 to Alexander Aff.).

[7]    Shortly after his termination, plaintiff went to work as a manager at Ruby Tuesday's.  (Plt. Depo., p. 346, ln. 20-22, p. 349, ln. 9-14; Ruby Tuesday Records (attached as Ex. F to Cracker Barrel's Evidentiary Submission)).  Plaintiff testified that when he applied for a job at Ruby Tuesday's, he revealed that he had been terminated from Cracker Barrel.  (Plt. Depo., p. 351, ln. 7-16, p. 416, ln. 12-18).  This is not true - he actually represented that he left Cracker Barrel because of "quality of life" issues.  (Ruby Tuesday Records # 50).

While Mr. Patterson was on the phone with plaintiff, Penny Schmidt, the Employee Training Coordinator, asked Mr. Patterson if plaintiff was okay because she was concerned about coverage for the store.  (Plt. Depo., p. 201, ln. 12-20).  Mr. Patterson told Ms. Schmidt that plaintiff had a death in the family.  (Plt. Depo., p. 201, ln. 20-22).  Ms. Schmidt asked Mr. Patterson when the funeral was and if they needed to do make any adjustments to the schedule. (Plt. Depo., p. 201, ln. 23 - p. 202, ln. 3).  Mr. Patterson then replied "don't blacks normally have their funerals on the weekend?"[8]  (Plt. Depo., p. 202, ln. 3-6; Patterson Aff. ¶18;[9] Schmidt Statement).[10]  Mr. Patterson made this comment because many African-Americans that he had known had funerals on the weekends and he believed this to be true.  (Patterson Aff. ¶ 18). Plaintiff called on Monday, and was not scheduled to return until Thursday, and Mr. Patterson was concerned that he would not return on Thursday.  (Patterson Aff. ¶¶ 17-18).  Mr. Patterson did not intend this comment to be derogatory.  (Patterson Aff. ¶ 18).  He believed it to be a true statement that was responsive to Ms. Schmidt's question.  (Patterson Aff. ¶ 18).  He was particularly concerned about scheduling because plaintiff's absence that day caused Mr. Patterson to have to work a double shift unexpectedly and he was concerned that he would have to work more when plaintiff attended the funeral.  (Patterson Aff. ¶¶ 17-18).

Plaintiff took off the next two days following this conversation, returned to work, and then he took off again the next week to attend the funeral in South Carolina.  (Plt. Depo., p. 202,

---

[8]    In his deposition, Plaintiff claimed for the first time that he heard Mr. Patterson say "don't blacks" and that he was offended by those two words.  (Plt. Depo., p. 202, ln. 3-7, p. 229, ln. 1-19).  Plaintiff did not hear the rest of the sentence and was not present for the conversation.  (Id.).

[9]    The Affidavit of Tommie Patterson and Exhibit 1 to Affidavit are attached as Ex. G to Cracker Barrel's Evidentiary Submission.

[10]    The EEOC Statement of Penny Schmidt is attached as Ex. H to Cracker Barrel's Evidentiary Submission.

ln. 16 - p. 203, ln. 5, p. 245, ln. 9-15).  When plaintiff finally returned to work, Ms. Schmidt told

him about Mr. Patterson's comment.  (Plt. Depo., p. 203, ln. 6-23, p. 206, ln. 1-22).  Plaintiff then

called the Home Office to seek advice on how to handle the issue raised by Ms. Schmidt.  (Plt.

Depo., p. 207, ln. 1-17, p. 208, ln. 9-10, p. 231, ln. 6 - p. 232, ln. 6; Hotline Call #1 (Ex. 8 to

Alexander Aff.)).   It was part of his job to report employee issues to the Home Office.

(Alexander Aff. ¶ 43).  Home Office told him that Rich Alexander would investigate the incident

since the comment was about the funeral that plaintiff said he was going to attend.  (Plt. Depo.,

p. 237, ln. 13-16, p. 245, ln. 17 - p. 246, ln. 10).

Mr. Alexander did investigate the matter and interviewed both Penny Schmidt and

Tommie Patterson.  (Plt. Depo., p. 246, ln. 6-10, p. 248, ln. 2-19, p. 250, ln. 1-6; Alexander Aff.

¶¶ 39-42; Hotline Call #2 (Ex. 7 to Alexander Aff.); Patterson Aff. ¶¶ 19-20 & Ex. 1).  Mr.

Patterson admitted to making the comment but explained that he did not intend for the comment

to be derogatory and that his experience with African-American friends led him to believe that it

was a true statement.  (Patterson Aff. ¶ 19).  Mr. Alexander told Mr. Patterson that he should not

have made the comment because it was inappropriate, told him to apologize to Ms. Schmidt and

warned him that future comments could cost him his job.  (Patterson Aff. ¶ 19).  Mr. Patterson

did apologize to Ms. Schmidt.   (Patterson Aff. ¶ 21; Schmidt Statement).  Plaintiff does not

allege that Mr. Patterson made any comments after this incident.  (Plt. Depo., p. 249, ln. 7-23).

Plaintiff's only complaint about Cracker Barrel's handling of the incident is that he thinks

the investigation was not proper because he was not "addressed."  (Plt. Depo., p. 227, ln. 3 - p.

228, ln. 23).  However, plaintiff talked to Mr. Alexander about the incident.  (Plt. Depo., p. 208,

ln. 6-12).  Mr. Alexander did not interview the plaintiff any further because plaintiff did not hear

the comment and Mr. Patterson admitted making the comment.  (Alexander Aff. ¶ 42).  Plaintiff

alleges that he inquired into the status of the investigation twice - once in March and once in April - and that Mr. Alexander said, "don't forget who you work for," and "it's my responsibility," on those respective occasions.  (Plt. Depo., p. 239, ln. 3 - p. 240, ln. 8, p. 248, ln. 2-15).  Plaintiff does not make any complaint about the remedial action taken.  (Plt. Depo., p. 227, ln. 3 -p. 228, ln. 23).

##### I.    Plaintiff Did Not Report Discrimination Or Retaliation To Cracker Barrel.

Plaintiff never complained to Cracker Barrel that any of his discipline was discrimination or retaliation, and although plaintiff was familiar with the Hotline, he never used it to report discriminatory or retaliatory discipline.  (See above; Alexander Aff. ¶ 44).  Although plaintiff wrote Mr. Phillips a detailed letter in June, 2005, he did not claim any discrimination or retaliation nor did he mention Mr. Patterson's comment.  (Plt. Letter to Phillips (Plt. Depo. Ex. 14)).  After his termination, plaintiff claimed in a Hotline call and to the EEOC, that he was terminated because he reported Penny Schmidt's concern about Mr. Patterson's comment.  (Plt. Depo., p. 327, ln. 3 - p. 330, ln. 12, p. 338, ln. 16 - p. 339, ln. 4; Hotline Calls; EEOC Charge (Plt. Depo. Ex. 5); EEOC Intake Notes (Plt. Depo. Ex. 9); EEOC Questionnaire (Plt. Depo. Ex 10).  Plaintiff lied to the EEOC and told them that prior to making the Hotline Call, he had no performance issues.  (Plt. Depo., p. 327, ln. 3 - p. 328, ln. 12, EEOC Intake Notes, p. 1).

Plaintiff told the EEOC that he was treated differently than General Managers Greg Waters, Kevin, Kathy and Don.  (EEOC Questionnaire, p. 4).  Plaintiff's allegations are hearsay and are not supported by any documentation or testimony by persons with knowledge.  Plaintiff alleges that Greg missed a meeting once, and told plaintiff that he was not documented for missing the meeting.  (Plt. Depo., p. 332, ln. 8 - p. 333, ln. 19).  Plaintiff alleges that Kevin told him he was tardy once and was not written up.  (Plt. Depo., p. 337, ln. 7-13).  Plaintiff alleges that Mr. Alexander had to throw out some product in Kathy's store and instead of writing her up

made her leave a voice mail explaining what happened and what she would do to correct it. (Plt. Depo., p. 337, ln. 14 - p. 338, ln. 13). He also alleges the managers missed food costs, but he does not know any specifics and does not know if they were written up for it. (Plt. Depo., p. 334, ln. 15 - p. 336, ln. 3). He does not know why he listed Don. (Plt. Depo., p. 338, ln. 14-15). The EEOC found no cause to believe any discrimination occurred and dismissed the Charge. (Plt. Depo. p. 339, ln. 5-16; EEOC Dismissal (Plt. Depo. Ex. 11)). Plaintiff then filed this lawsuit alleging discrimination and retaliation in his employment with Cracker Barrel.[11] (Compl.).

### III.    ARGUMENT

Plaintiff's Complaint has only two counts, one for intentional discrimination and one for disparate treatment, and although confusing, plaintiff also appears to allege retaliation. Those claims are due to be dismissed because it is undisputed that his performance was poor, and he has not shown any basis for finding pretext. In fact, plaintiff should have never been hired at Cracker Barrel because he lied about his education and employment history. He also alleges a violation of section 1983, but that cause of action also must be dismissed because there was no state action. Plaintiff did not allege harassment in his EEOC charge or his deposition, but because the complaint mentions it, Cracker Barrel also shows why that claim is not cognizable.

**A.    Plaintiff's Title VII Race Discrimination Claim Is Due To Be Dismissed.**

**1.    Plaintiff Cannot Establish A Prima Facie Case.**

When a plaintiff alleges discrimination in the form of disparate treatment, "liability depends on whether the protected trait … actually motivated the employer's decision." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 141 (2000) (citing <u>Hazen Paper Co. v. Biggins</u>,

---

[11]    After his termination, plaintiff continued to eat at Cracker Barrel. He made a complaint with the Department of Justice about discriminatory guest service (Plt. Depo., p. 374, ln. 11 - p. 375, ln. 16), but that is not a part of this lawsuit. (Compl.).

507 U.S. 604 (1993)).  The plaintiff's race must have "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." Id.  The Supreme Court says unequivocally "[p]roof of discriminatory motive is critical" in a disparate treatment case.  International Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977).

Under the well-established tripartite framework for analyzing circumstantial evidence of employment discrimination, plaintiff carries the initial burden of establishing a prima facie case of discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  To establish a prima facie case, plaintiff must show: (1) that he was a member of a protected class; (2) that he was qualified, (3) that adverse employment action was taken against him; and (4) that the employer treated similarly situated employees outside the protected class more favorably.  Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  Plaintiff cannot establish the second and fourth elements.  To the extent he is complaining about the evaluation and disciplines which preceded his termination, he also cannot establish the third element.

First, plaintiff lied about his qualifications for the job.  He represented that he had a college degree, but he did not.  He also represented that he had had experience as a successful restaurant manager with two other companies when in fact he had been fired from both.  Cracker Barrel would not have hired him if they had known the truth because he was not qualified.

Second, to the extent that plaintiff claims that the evaluation and disciplines issued to him prior to his termination were discriminatory, that documentation does not amount to adverse action.  Performance evaluations and disciplines that do not result in any tangible action, such as loss of pay, do not constitute adverse action.  See Davis v. Town of Lake Park, Fla, 245 F.3d 1232, 1241-43 (11th Cir. 2001).  In Davis, the Eleventh Circuit stated as follows:

> Employer criticism, like employer praise, is an ordinary and appropriate feature of the workplace.  Expanding the scope of Title VII to permit discrimination

> lawsuits predicated only on unwelcome day-to-day critiques and assertedly unjustified negative evaluations would threaten the flow of communication between employees and supervisors and limit an employer's ability to maintain and improve job performance. Federal courts ought not to be put in the position of monitoring and second-guessing the feedback that an employer gives, and should be encouraged to give, an employee. Simply put, the loss of prestige or self-esteem felt by an employee who receives what he believes to be unwarranted job criticism or performance review will rarely - without more - establish the adverse action necessary to pursue a claim under Title VII's anti-discrimination clause.

245 F.3d at 1242. See also Hooks v. Bank of America, 183 Fed. Appx. 833, 835-36 (11th Cir.), cert. denied, 127 S. Ct. 515 (2006) and Bazemore v. Georgia. Tech. Auth., 2007 WL 917280, at *3-4 (N.D. Ga. Mar. 23, 2007). It is undisputed that plaintiff did not suffer any tangible detriment as a result of the disciplines or evaluations until he was terminated; thus there was no adverse action.

Third, plaintiff has no evidence that Cracker Barrel treated any employee similarly situated to plaintiff more favorably. Dawson v. Henry County Police Dept., 2007 WL 1893367, at *2 (11th Cir. July 3, 2007) ("According to [the plaintiff], nothing requires that the disciplined conduct be the same or nearly identical to that for which the complainant was disciplined. But as we have said, the 'quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'") (quoting Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)). Plaintiff listed a few General Managers that he thinks had instances of performance problems but were not terminated. This allegation is not sufficient to defeat summary judgment for several reasons. First, the alleged statements by these General Managers that plaintiff relies on are inadmissible hearsay and cannot be considered. See e.g., Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999). Second, the alleged conduct by these managers is not at all comparable to plaintiff's numerous performance problems. For example, according to plaintiff's inadmissible hearsay,

Greg missed one meeting, Kevin was tardy once, and Kathy had some product that should have been discarded. Plaintiff was never disciplined and certainly was not terminated over a single instance. Plaintiff's discipline and termination was an accumulation of many performance problems, and there is no evidence that any of these managers had the multitude of problems that plaintiff did. Moreover, plaintiff does not actually know whether or not these employees were counseled for any of these alleged instances. Plaintiff's vague, inadmissible and irrelevant evidence does not establish that any employee was treated more favorably than him. Because plaintiff cannot establish the elements of a prima facie case of race discrimination, his claim should be dismissed.

**2.    Plaintiff Cannot Establish That Cracker Barrel's Legitimate, Non-Discriminatory Reasons For Its Actions Were Pretext.**

If plaintiff did establish a prima facie case, Cracker Barrel must articulate, but not persuade the trier of fact, that the alleged adverse employment decision was made for "legitimate, nondiscriminatory reasons." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir. 1997), <u>cert. denied</u>, 522 U.S. 1045 (1998). Once the defendant articulates a "legitimate, nondiscriminatory reason" for its actions, any presumption of discrimination arising out of the prima face case "drops from the case." <u>Id</u>. Thus, the plaintiff must establish that the employer's articulated reason was a pretext for discrimination. <u>Turlington v. Atlanta Gas Light Co.</u>, 135 F.3d 1428, 1432 (11th Cir. 1998). Plaintiff must present "concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice." <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1081 (11th Cir. 1990).

Cracker Barrel disciplined and terminated plaintiff for poor performance. Plaintiff does not have any evidence of discrimination; rather, he is second-guessing Cracker Barrel's

assessment of his performance.  Plaintiff's own personal assessment of his performance is not sufficient to prove pretext.  In Lester v. Compass Bank, 1997 WL 839010 (N.D. Ala. Mar. 19, 1997), the Court rejected a plaintiff's claim for retaliatory discharge.  The plaintiff had combated the employer's allegations of poor job performance with his own testimony regarding his personal job performance.  The court stated that the plaintiff "must do more than challenge the judgment of [the defendant] through his own self-interested assertions."  Id. at *3.  The court further stated that "[i]t is the perception of the employer which is relevant in determining whether [the plaintiff] was fulfilling his job.  [Plaintiff] has failed to offer anything other than his subjective belief to contradict [the defendant]'s reason for his termination."  Id. (citation omitted); see also, Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980) ("[Plaintiff]'s perception of himself, however, is not relevant.  It is the perception of the decision maker which is relevant."); see also, Chapman v. AI Transp., 229 F.3d 1012, 1051 n.34 (11th Cir. 2000) ("subjective perceptions of an employee, without more, are insufficient to survive summary judgment"); Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997) ("[t]he inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance"); and Jones v. Alabama Power Co., 1995 WL 238338, at *22 (N.D. Ala. Jan. 3, 1995) ("It is the perception of the decision maker which is relevant, not plaintiff's perception of herself."), aff'd, 77 F.3d 498 (11th Cir. 1996).

Plaintiff may disagree with the reasoning of his superiors, but that is not sufficient to show pretext.  "[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer."  Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997).  See also Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470

(11th Cir. 1991) (stating that federal courts "do not sit as a super-personnel department that re-examines an entity's business decisions.  No matter how medieval a firm's practices, no matter how high handed its decisional process, no matter how mistaken the firm's managers, the [civil rights laws do] not interfere.  Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.") and Gilchrist v. Bolger, 733 F.2d 1551, 1554 (11th Cir. 1984) ("Congress sought only to give all persons equal access to the job market, not to limit an employer's right to exercise his informed judgment as to how to best run his shop.").  Clearly, Mr. Alexander and Mr. Phillips determined that plaintiff's performance was unacceptable, and they warned him numerous times.  The fact that plaintiff disagrees is irrelevant because he has no evidence that their assessment was false.  Moreover, it makes no sense that Mr. Alexander and Mr. Phillips would fire plaintiff because of his race when they promoted him and tried to replace him with an African-American.  Thus, his claim should be dismissed.

### B. Plaintiff's Title VII Retaliation Claim Is Due To Be Dismissed.

To establish a prima facie case of retaliation, the plaintiff must show: "(1) []he participated in an activity protected by Title VII; (2) []he suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision."  Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000).  Plaintiff cannot establish any of these three elements.

First, plaintiff did not engage in any statutorily protected conduct.  An employee is protected from discrimination if: (1) "he has opposed any practice made an unlawful employment practice by this subchapter;" or (2) "he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter…."  Clover v. Total System Servs., Inc., 176 F.3d 1346, 1350 (11th Cir. 1999) (quoting 42 U.S.C. §

2000e-3(a)). Plaintiff cannot base his claim on the participation clause because there was no pending EEOC investigation at the time he reported Patterson's comment. <u>E.E.O.C. v. Total Sys. Servs., Inc.</u>, 221 F.3d 1171, 1174 n.3 (11th Cir. 2000); <u>McShane v. U.S. Attorney General</u>, 144 Fed. Appx. 779, 789-90 (11th Cir. 2005). Nor do plaintiff's allegations support a claim under the opposition clause. Under that clause, plaintiff must show that he had a "good faith, reasonable belief" that his employer engaged in unlawful discrimination. <u>Clover</u>, 176 F.3d at 1351. "The objective reasonableness of an employee's belief that [his] employer has engaged in an unlawful employment practice must be measured against existing substantive law." <u>Id.</u> (citing <u>Harper v. Blockbuster Entm't Corp.</u>, 139 F.3d 1385, 1388 n.2 (11th Cir. 1998)). No reasonable person would believe that the one comment by Tommie Patterson about funerals is actionable conduct. <u>See, e.g.</u>, <u>Clark County School Dist. v. Breeden</u>, 532 U.S. 268, 270 (2001).

In the case of <u>Little v. United Techs.</u>, 103 F.3d 956 (11th Cir. 1997), the court addressed a similar situation by stating the following:

> Having reviewed the record, we conclude that Little has failed to establish the first element of his prima facie case alleging retaliatory discrimination; that is, he has failed to show that he engaged in a statutorily protected activity. We note, at the outset, that only the Ninth Circuit has addressed the question at issue before us: Whether the expression of opposition to a single comment by one co-worker to another can constitute opposition to an unlawful employment practice as a matter of law. In <u>Silver v. KCA, Inc.</u>, 586 F.2d 138 (9th Cir. 1978), the plaintiff objected to a racially derogatory remark uttered by a co-worker, demanded and received an apology from the same co-worker, and subsequently was fired. In finding that the plaintiff had failed to establish a prima facie case of retaliatory discharge under Title VII, the Ninth Circuit resolved that the opposition of an employee to a co-worker's own individual act of discrimination "does not fall within the protection of [Title VII]." <u>Id.</u> at 142.

> We agree with the Ninth Circuit's disposition of <u>Silver</u>, a case factually similar to the one at hand. As stated by that court, [b]y the terms of the statute … not every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual. <u>Id.</u> at 141. We previously have held that in order to hold an employer responsible under Title VII for a hostile environment created by a supervisor or co-worker, a plaintiff must show

that the employer knew or should have known of the harassment in question and failed to take prompt remedial action. Splunge v. Shoney's, Inc., 97 F.3d 488, 490 (11th Cir. 1996). See also Silver, 586 F.2d at 142 ("Even a continuing course of racial harassment by a co-employee cannot be imputed to the employer unless the latter both knows of it and fails to take remedial action."). Here, Little's opposition to the racial remark uttered by Wilmot, a co-worker, is protected conduct within the parameters of the statute only if Wilmot's conduct can be attributed to Carrier. Based on the facts of this case, we conclude that Wilmot's racially offensive comment alone is not attributable to Carrier and, accordingly, Little's opposition to the remark did not constitute opposition to an unlawful employment practice.

Id. at 959-60. See also Bicknell v. City of St. Petersburg, 2006 WL 560167, at *6 (M.D. Fla. Mar. 7, 2006) ("An employee's opposition to an act of discrimination or harassment by a co-worker does not fall within the protection of Title VII unless the discrimination can be attributed to the employer, because Title VII only prohibits unlawful employment practices or acts on the part of the employer, not its employees."). No reasonable person could believe that the one alleged comment by Patterson constituted discrimination by Cracker Barrel. Moreover, plaintiff did not report the comment until Ms. Schmidt allegedly complained about the comment to him, which indicates that plaintiff did not subjectively believe that the comment was discriminatory. When he did report it, he was only fulfilling one of his job duties, which was to report any alleged discrimination to the Company. This was not protected conduct. Second, for the reasons discussed in Section III.A.1 above, plaintiff cannot establish that he was subjected to an adverse employment action prior to his termination. Hooks v. Bank of America, 183 Fed. Appx. 833, 835-36 (11th Cir.), cert. denied, 127 S. Ct. 515 (2006); Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1241-43 (11th Cir. 2001) and Bazemore v. Georgia Tech. Auth., 2007 WL 917280, at *3-4 (N.D. Ga. Mar. 23, 2007).

Finally, plaintiff also cannot establish the required causation. He appears to assert that simply because he reported the Patterson comment, the disciplines that followed are evidence of retaliation. Plaintiff's reliance on temporal proximity in this case is incorrect. The evidence is

undisputed that plaintiff had performance problems which were addressed by his supervisor before he reported the Patterson comment.  In <u>Clark County School Dist. v. Breeden</u>, 532 U.S. 268 (2001), the U.S. Supreme Court held that if a course of action is considered before the employer has knowledge of the complaint, then continuing that course of action soon after the complaint cannot be evidence of causation.  <u>Id.</u> at 272.  The employer in <u>Breeden</u> presented evidence that it had considered transferring the plaintiff before the plaintiff's complaint to the EEOC.  The Court stated that "[e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed…."  <u>Id.</u>  The Court also stated that employers "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."  <u>Id.</u>; <u>see also</u> <u>Cotton v. Cracker Barrel Old Country Store, Inc.</u>, 434 F.3d 1227 (11th Cir. 2006) (retaliation claim was unsupported by evidence of causation when plaintiff was informed that her hours would be reduced before any protected action) and <u>Saffold v. Special Counsel, Inc.</u>, 147 Fed. Appx. 949 (11th Cir. 2005).

Plaintiff admits that his supervisors counseled him about his performance within the first few months of his tenure as General Manager and before the Patterson incident.  He also received a poor evaluation for the time period of September, 2004 to January, 2005, which was before he made any report and was based on objective financial numbers and other indicators of performance relative to that time period.  The fact that Cracker Barrel continued to issue progressive discipline for the problems is not evidence of causality.  <u>Breeden</u>, 532 U.S. at 272.

Additionally, federal courts have held that evidence of poor performance before a complaint destroys a connection between a protected action and an adverse action.  In <u>Soileau v. Guilford of Maine, Inc.</u>, 105 F.3d 12, 17-18 (1st Cir. 1997), the Court held that a plaintiff who "was disciplined and warned of discharge if his performance did not improve," could not use

close timing to establish causation.  The court stated that "[t]he ADA was not meant to prevent employers from taking steps to address poor performance by non-disabled employees."  See also Henry v. Guest Servs., Inc., 902 F. Supp. 245, 254 (D.D.C. 1995) ("[t]o allow the antidiscrimination laws to be used by poorly performing employees will eventually work to the detriment of those who have a legitimate need for the protection of the laws"), aff'd, 98 F.3d 646 (D.C. Cir. 1996).  Because plaintiff's poor performance began before his report, he cannot use his discharge for performance to indicate a causal relation between the action and the discharge.

Moreover, the time between plaintiff's report and his firing is too long and will not, without additional evidence, satisfy the causal connection element of the prima facie case for retaliation.  The Eleventh Circuit has held that "[i]n the absence of other evidence of causation, temporal proximity between the protected activity and the adverse action must be close in order to show a causal connection."  Grier v. Snow, 206 Fed. Appx. 866, 869 (11th Cir. 2006).  The Eleventh Circuit has held that a gap of more than three months between the two actions is too long to create a causal connection without additional evidence.  See, e.g., Keith v. MGA, Inc., 211 Fed. Appx. 824, 827 (11th Cir. 2006) ("four month gap cannot, by itself, establish that [plaintiff] was fired because of the complaint"); Higdon v. Jackson, 393 F.3d 1211 (11th Cir. 2004) (three month interval too long to create causal connection); Booth v. Birmingham News Co., 704 F. Supp. 213 (N.D. Ala.) (six to seven months after protected action insufficient), aff'd, 864 F.2d 793 (11th Cir. 1988).

In Breeden, the U.S. Supreme Court weighed in on the proximity timeline stating that "cases that accept mere temporal proximity between an employer's knowledge of a protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close."  Breeden, 532 U.S. at

273 (citing <u>O'Neal v. Ferguson Constr. Co.</u>, 237 F.3d 1248, 1253 (10th Cir. 2001)).  The court then cited two federal circuit court cases where three and four months were insufficient to establish a causal relationship.  <u>See</u>, <u>Richmond v. ONEOK, Inc.</u>, 120 F.3d 205, 209 (10th Cir. 1997); <u>Hughes v. Derwinski</u>, 967 F.2d 1168, 1174-75 (7th Cir. 1992).

In the instant case, plaintiff was fired on September 4, 2005 after reporting the Patterson comment to the Home Office in March 2005, and receiving disciplinary actions in June and August.  According to controlling case law, the time between the complaint and the disciplinary actions, and the time between the complaint and the firing, was too long for plaintiff to establish a causal connection without additional evidence of retaliation, and he has no such evidence.

Finally, as discussed in detail in section III.A.2 above, even if plaintiff could establish a prima facie case, he cannot prove that Cracker Barrel's legitimate reasons for its actions were pretext for retaliatory animus.  <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 515 (1993); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-03 (1973).  Because the plaintiff bears the burden of proving pretext, he must present "significant probative" evidence on the issue to avoid summary judgment.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).  The plaintiff must establish evidence from which a reasonable trier of fact would <u>disbelieve</u> rather than <u>disagree</u> with the employer's proffered reasons.  <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1543 (11th Cir. 1997).  It is undisputed that plaintiff had performance problems, that he was warned about those performance problems, and that the problems continued.  His disagreement with the assessment of his performance is irrelevant; thus, his retaliation claim should be dismissed.

### C.    Plaintiff's Section 1983 Claim Must Be Dismissed.

In his Complaint, plaintiff asserts a claim under 42 U.S.C. § 1983.  This claim is due to be dismissed as a matter of law because there is no state action in this case.  To maintain a claim

under Section 1983, a plaintiff must assert the following: "(1) that [he] suffered a deprivation of 'rights, privileges or immunities secured by the Constitution and laws' of the United States, and (2) that the act or omission causing the deprivation was committed by a person acting under color of law." Wideman v. Shallowford Cmty. Hosp., Inc., 826 F.2d 1030, 1032 (11th Cir. 1987) (citations omitted).  In elaborating on the "color of law" requirement, the Supreme Court has stated that "liability attaches only to those wrongdoers 'who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'" National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191 (1988) (citations omitted).  The key concept under Section 1983 "is the exercise of coercion, dominion, or restraint by *the state*." Wideman, 826 F.2d at 1035-36 (emphasis added).  Here, the plaintiff does not and cannot allege that Cracker Barrel "carr[ies] a badge of authority of a State and represent[s] it in some capacity." Tarkanian, 488 U.S. at 191.  For this reason, plaintiff's claim for alleged violation of Section 1983 is due to be dismissed.  See Lynn v. United Techs. corp., 916 F. Supp. 1217, 1219 (M.D. Ala. 1996); International Molders & Allied Workers, AFL-CIO v. Buchanan Lumber, Birmingham, 459 F. Supp. 950, 952 (N.D. Ala. 1978) (granting the defendant's motion to dismiss the plaintiff's section 1983 claim because the defendant, a private corporation, was not acting under the color of state law), aff'd, 618 F.2d 782 (5th Cir. 1980).

**D.    Any Harassment Claim Should Be Dismissed.**

It is unclear from the Complaint whether plaintiff attempts to assert a harassment claim. Plaintiff did not mention any alleged harassment in his EEOC charge or his deposition testimony.  Out of an abundance of caution, Cracker Barrel shows this court that any such claim should be dismissed because plaintiff cannot establish the elements of a harassment claim.  To establish a claim of hostile environment racial harassment an employee must show: (1) that he

belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment was based on his race; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.  Gullatte v. Westpoint Stevens, Inc., 100 F. Supp. 2d 1315, 1321-22 (M.D. Ala. 2000) (citing Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999)).  Plaintiff cannot establish the last four elements.

This case is similar to Merriweather v. Alabama Dep't of Public Safety, 17 F. Supp. 2d 1260, 1272 (M.D. Ala. 1998), aff'd, 199 F.3d 443 (11th Cir. 1999), in that at most plaintiff can only rely on the incidents that form the basis of his disparate treatment claim to make out a prima facie hostile environment case.  In Merriweather, the court granted the motion for summary judgment on the disparate treatment claim and on the hostile environment claim and stated:

> As a basis for her hostile environment claim, [Plaintiff] relied upon allegations of harassment underlying her disparate treatment claims as evidence that unwelcome harassment actually occurred.  The court examined each allegation separately in section A. above and found that [Plaintiff] could not state a prima facie case of racial harassment based upon disparate treatment.  Furthermore, [Plaintiff] has not produced any evidence that she experienced any racially discriminatory intimidation, ridicule, or insult at her workplace.  Under these circumstances, [Plaintiff] has also failed to carry her burden to show that unwelcome harassment occurred and cannot state a prima facie case of hostile environment racial discrimination.

Id. at 1272.  As discussed above, the incidents alleged by plaintiff are not actionable for disparate treatment purposes and similarly cannot establish the second and third elements of a prima facie case of harassment.

"The fourth element -- that the conduct complained of was 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment' -- is the element that 'tests the mettle of most … harassment claims." Id. at 1323 (citing Gupta v. Florida Bd. of Regents, 212 F.3d 571 (11th Cir. 2000).  "The plaintiff must show that in light of

all the circumstances, the working environment was both subjectively and objectively abusive." See Mitchell v. Carrier Corp., 954 F. Supp. 1568, 1576-77 (M.D. Ga. 1995). Thus, conduct that a reasonable person would not find hostile or abusive is beyond the purview of Title VII. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993). Without a doubt, plaintiff's complaints do not rise to the level of actionable harassment.

Finally, plaintiff cannot establish a basis for holding Cracker Barrel liable for any harassment because plaintiff has not shown that Cracker Barrel knew of should have known of any alleged harassment and failed to take prompt remedial action. Henson v. City of Dundee, 682 F.2d 897, 905 (11th Cir. 1982). Plaintiff's allegation that he was not "addressed" as part of the investigation is not sufficient to create a cause of action under the law. An employee cannot complain that an investigation of a racial harassment claim is inadequate if the remedial action taken to remedy the complaint was appropriate. See Baldwin v. Blue Cross / Blue Shield of Ala., 480 F.3d 1287, 1305 (11th Cir. 2007), ("[A] reasonable result cures an unreasonable process ... because Title VII is concerned with preventing discrimination, not with perfecting process."); Sparks v. Regional Medical Ctr. Bd, 792 F. Supp. 735, 744 (N.D. Ala. 1992) ("[a]n employer is absolved from liability if it takes prompt and appropriate remedial action in response to the harassment"). See also Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1288 (11th Cir. Fla. 2003) ("where the substantive measures taken by the employer are sufficient to address the harassing behavior, complaints about the process under which those measures are adopted ring hollow").

In this case, Cracker Barrel took appropriate steps and remedial measures to make it "reasonably likely to prevent the misconduct from recurring." Baldwin, 480 F.3d at 1305 (quoting Kilgore v. Thompson & Brock Mgmt., Inc., 93 F.3d 752, 754 (11th Cir. 1986)). It did a

proper investigation under the circumstances. Mr. Alexander interviewed Mr. Patterson and Ms. Schmidt and because Mr. Patterson admitted to the comment, there was no need to do any additional investigation. Mr. Patterson was counseled, apologized, and the plaintiff does not allege any subsequent comments. Thus, a harassment claim in this case cannot succeed.

### E.        Plaintiff's Claim For Damages Is Limited By After-Acquired Evidence.

Plaintiff's claim for damages is limited by the fact that he lied about his qualifications. In McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 360-61 (1995), the Supreme Court held that an employee's claim for damages under Title VII is limited if during the investigation and/or litigation of the claim, the employer learned of misconduct that is a legitimate basis for discharging the employee.[12] The after-acquired evidence rule applies to cases in which the after-acquired evidence "concerns the employee's misrepresentations in a job application or resume, as well as cases in which the after-acquired evidence relates to employee wrongdoing during employment." Wallace v. Dunn Constr. Co., 62 F.3d 374, 379 (11th Cir. 1995).

"Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." McKennon, 513 U.S. at 362-63. "Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, we [the court] cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit." McKennon, 513 U.S. at 362. As a result, equity necessarily limits part of the damages that may

---

[12]        While McKennon dealt with a claim under the Age Discrimination in Employment Act ("ADEA,") its holding is applicable to claims brought under Title VII. Wallace v. Dunn Constr. Co., 62 F.3d 374, 378 (11th Cir. 1995).

be had by an employee.  "[N]either reinstatement nor front pay is an appropriate remedy" where after-acquired evidence would have led to an employee's termination.  Id.  Injunctive relief will also not be appropriate.  Wallace, 62 F.3d at 380.  A backpay award will also be limited; and it is calculated "from the date of the unlawful discharge to the date the new information was discovered."  Id.

It is undisputed that plaintiff lied about his education and employment history to Cracker Barrel.  It is undisputed that had Cracker Barrel known that plaintiff lied about his qualifications, it would have never hired him in the first place.  As a result, he cannot recover frontpay, reinstatement, or any injunctions against Cracker Barrel.  Further, backpay is limited to the period from when plaintiff was terminated until the date the lies were discovered.  Thus, summary judgment should be granted in favor of Cracker Barrel on plaintiff's claims for these damages.

## IV.    CONCLUSION

For all of the foregoing reasons, Cracker Barrel respectfully requests that this Court enter summary judgment in favor of the defendant, dismiss plaintiff's claims in their entirety and tax costs against the plaintiff.

s/ Jennifer M. Busby                   ____
Jennifer M. Busby (BUS009)
Ashley H. Hattaway (HAT007)

Attorneys for Cracker Barrel Old Country Store, Inc.

OF COUNSEL:

BURR & FORMAN LLP
3400 Wachovia Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Byron R. Perkins
The Cochran Law Firm
505 North 20th Street, Suite 825
Birmingham, Alabama 35203

Monica A. York, Esq.
Breedlove & Lassiters, LLP
250 E Ponce de Leon Avenue
Suite 425
Decatur, GA 30030

s/ Jennifer M. Busby_____
OF COUNSEL