# UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF ALABAMA

OFFICE OF THE CLERK

POST OFFICE BOX 711

MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK

TELEPHONE (334) 954-3600

September 4, 2007

# NOTICE OF CORRECTION

**From:  Clerk's Office**

**Case Style:  Rodgers v. Cracker Barrel Old Country Store, Inc.**

**Case Number:  2:06cv01067-WKW**

**This Notice of Correction was filed in the referenced case this date to attach the correct PDF documents previously attached.**

**The correct PDF documents are attached to this notice for your review.  Reference is made to document # 23, # 24, and # 25  filed on   August 31, 2007.**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DWIGHT RODGERS,               )
                              )
        Plaintiff,            )        CIVIL ACTION NO.:
                              )        2:06-CV-1067-WKW-SRW
                              )
v.                            )
                              )
CRACKER BARREL OLD            )
COUNTRY STORE, INC.,          )
                              )
        Defendant.            )

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, Dwight Rodgers, and pursuant to Fed. R. Civ. P. 56

(b) and hereby moves this Court to dismiss Defendant's Motion for Summary

Judgment as to all claims asserted by Plaintiff.  Plaintiff shows this Court that there

are genuine issues of material fact, and that the Plaintiff is entitled to Summary

Judgment as a matter of law on all claims asserted in the Complaint.

Plaintiff can prove a prima facie case of disparate treatment related to his

termination because he was qualified for the job and other Caucasian store

managers were treated more favorably.  Plaintiff can make out a prima facie case

of disparate treatment because he was qualified for the job and the adverse action

taken against him was that he was fired for reporting an incident of discrimination

directed at him, and other Caucasian managers were treated more favorably by not being continually reprimanded and then terminated after filing his complaint.

Defendant's actions against Plaintiff were pretextual in that he was targeted for termination, because of his race. Plaintiff opposed an racially derogatory statement which was unlawful conduct. Plaintiff was retaliated against, when he demonstrated that he received a favorable evaluation, was promoted to General Manager and then targeted after filing on behalf of a employee. Plaintiff was subject to the continued harassing disciplinary actions. Defendant did not acquire evidence after the fact to support limiting Plaintiff's damages.

In support of its response and in addition to the pleadings, Plaintiff submits Plaintiff's Statement of Undisputed Material Facts and Plaintiff's Response to Defendant's Statement of Undisputed Facts; Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment; Plaintiff's Exhibits in Support of his Response to Defendant's Motion for Summary Judgment, evidentiary materials including deposition excerpts, affidavits and declarations of other witnesses and exhibits.

Accordingly, Plaintiff respectfully requests that Defendant's request for Summary Judgment be DENIED.

Respectfully submitted this 27th day of August, 2007.

2

Respectfully submitted,


 /s/Byron Perkins
State Bar No. ASB - 0183 - N75B
Attorney for Plaintiff


The Cochran Firm
505 North 20th Street - Suite 825
Birmingham, Alabama 35203
(205) 244-1115
(205) 244-1171 fax
email: Bperkins@CochranFirm.com


s/Monica A. York
Monica A. York
State Bar No. 781153
Attorney for Plaintiff


ATTORNEYS
BREEDLOVE & LASSITER, LLP
250 East Ponce de Leon Avenue
Suite 425
Decatur, Georgia 30030
(404) 377-5512 (telephone)
(404) 377-5515 (facsimile)
myork@breedloveandlassiter.com

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

DWIGHT RODGERS,                    )
                                   )
    Plaintiff,          )          CIVIL ACTION NO.:
                                   )          2:06-CV-1067-WKW-SRW
                                   )
v.                                 )
                                   )
CRACKER BARREL OLD                 )
COUNTRY STORE, INC.,               )
                                   )
    Defendant.          )

### <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on August 27, 2007, I placed in US mail

**<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY</u>**

**<u>JUDGMENT</u>** to the following attorneys of record and electronically filed same

using the CM/ECF system on August 31, 2007:

Jennifer Busby

Ashley H. Hattaway

Burr & Forman LLP

3400 Wachovia Tower

420 North 20th Street

Birmingahm, Alabama 35203

4

Respectfully submitted,

/s/Byron Perkins
Byron Perkins
State Bar No. ASB - 0183 - N75B
Attorney for Plaintiff


The Cochran Firm
505 North 20th Street - Suite 825
Birmingham, Alabama 35203
(205) 244-1115
(205) 244-1171 fax
email: Bperkins@CochranFirm.com


s/Monica A. York
Monica A. York
State Bar No. 781153
Attorney for Plaintiff


ATTORNEYS
BREEDLOVE & LASSITER, LLP
250 East Ponce de Leon Avenue
Suite 425
Decatur, Georgia 30030
(404) 377-5512 (telephone)
(404) 377-5515 (facsimile)
myork@breedloveandlassiter.com


5

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DWIGHT RODGERS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.: |
| | ) | 2:06-CV-1067-WKW-SRW |
| | ) | |
| v. | ) | |
| | ) | |
| CRACKER BARREL OLD | ) | |
| COUNTRY STORE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff Dwight Rodgers, by an through the undersigned counsel, and files this his Brief in Opposition to Defendants' Motion for Summary Judgment, showing this Honorable Court as follows:

## I.    INTRODUCTION

Dwight Rodgers, an African American male, was employed by Cracker Barrel Old Country Store, Inc. from July 22, 2002 as a Manager. He was promoted to General Manager September, 2004. Mr. Rodgers was promoted by the Defendant because of his skills and ability. During Mr. Rodgers employment he was discriminated against because of his race. He was targeted for termination when he made an internal complaint based on comments made by a Sr. Associate

Manager.  In March of 2005 a Sr. Associate Manager who reported to Mr. Rodgers made a derogatory comment about African Americans which parts were overheard by Mr. Rodgers and the full comment was made in the presence of another associate who was offended by the comment.  Mr. Rodgers' filed a complaint with the Human Resources Department at the corporate offices in Lebanon, Tennessee. Defendants did not investigate the claim.   There had been other derogatory statements made by others. Mr. Rodgers made at least six (6) inquires regarding the complaint to employee relations with his final inquiry being made on August 17, 2005.  The Defendant failed to investigate Mr. Rodgers' claims and ultimately retaliated against the Plaintiff by issuing numerous disciplinary actions regarding his performance and then finally terminating his employment.

## II.   STATEMENT OF UNDISPUTED FACTS

### A.   Cracker Barrel Is An Equal Opportunity Employer.

Plaintiff admits that the Defendant had in place published policies on equal employment opportunity, harassment, retaliation and open door policies, but denies that they were enforced.    Plaintiff admits that employees could utilize a toll free Hotline or advise a Manager, District Manager when they have been subjected to discrimination, harassment or retaliation.   Plaintiff admits to being trained on

2

policy, kept copies of them and abided by them. Plaintiff is without sufficient information to admit or deny information about his supervisors employment history or training with Defendant.

### B.    Plaintiff Was Hired Based On A False Employment History.

Plaintiff denies' that he forwarded his resume to a recruiter. Plaintiff's resume was forwarded via monster.com to a recruiter for Defendant and he was interviewed by that recruiter. [Rodgers Aff. ¶¶ 6and 7]. Plaintiff admits that he explained to the recruiter that he was no longer working at RTM that he had resigned [Rodgers Aff. ¶ 8]. Additionally, during the background check conducted by Defendant, the former employer explained the circumstances surrounding Plaintiff's departure. The explanation clearly states that he was "following company policy and suspended a team member for a few days". [Rodgers Aff.¶ 10 and Plaintiff's Ex. A]. Plaintiff was contacted by Human Resources after being told to take time off. Plaintiff did not like the response or backing he received from the employer and decided to terminate his employment. [Rodgers Aff. ¶ 11]. Plaintiff admits that he was hired by Defendant into its Management-In-Training Program based upon his resume, employment history, and interview with the Defendant all which qualified him for the position. [Rodgers Aff. ¶ 12].

3

Plaintiff denies that his resume is false. [Rodgers Aff. ¶ 13]. Plaintiff denies that the resume from the monster.com website states he has a bachelor's degree without explanation. [Rodgers Aff. ¶¶ 13 and 14 and Plaintiff's Ex. B]. Plaintiff denies lying on his resume about his education or to Defendant. His resume illustrates that he was one half year away from completing the degree in July of 2002 on page 3, as does his response to discovery requests. [Rodgers Aff. ¶ 14 and Plaintiff's Ex. B]. In addition, Plaintiff relayed this information to the recruiter that he interviewed with. [Rodgers Aff. ¶ 15]. Plaintiff was not terminated from RTM for violation of company policy. [Rodgers Aff.¶ 8 and Plaintiff's Ex. A].

Plaintiff did work at Bojangles as a Training Unit Director. [Plt.'s Resume and Plaintiff's Depo. p. 36]. It was Plaintiff's job in this position to learn the operations of the company and provide hands-on training to employees of the company. [Plaintiff's Depo. p. 42]. Plaintiff denies that he was personally receiving disciplinary reports. Each disciplinary report was a reflection of the store that he was tasked with training, which is reflected by the Employee Change Status forms, demonstrating the change in location. [Rodgers Aff. ¶ and Plaintiff's Ex. C]. Plaintiff was also never suspended. [Rodgers Aff. ¶ 18]. All of the disciplinary reports have three sections that included checkoff boxes, labeled

4

"Description of Incident," "Disciplinary Action Taken" and "Consequence of Repeat Violations." [Bojangles Records ## 23, 33, 29-41].  The disciplinary action taken in each instance was not suspension which was one of the categories that could have been checked. [Bojangles Records ## 23, 33, 29-41].  What Defendant has mistaken for suspension, was the consequence of repeat violations, however no suspension took place. [Bojangles Records ## 23, 33, 29-41].

Plaintiff admits that he stated he sought another position in response to questions surrounding his leaving Bojangles. Plaintiff submitted his resignation on July 22, 2001 because of practices of the franchisee and sought other employment. [Plaintiff's Ex. D].  Plaintiff was not terminated for making misrepresentations and was eligible for rehire after speaking with Linda Wells, a company representative. [Plaintiff's Ex. E].   Plaintiff denies that Defendant was not aware of his educational and employment history.  He was interviewed and a background check was conducted by Defendant prior to commencement of employment and Plaintiff explained his entire work history to Defendant. [Rodgers Aff. ¶ 20].

### C.    Plaintiff's Employment History With Cracker Barrel

Plaintiff admits that he completed employment training in October, 2002 and became an Associate Manager in the Athens, Georgia store.  Plaintiff admits that

5

he was promoted to the position of Senior Associate Manager in July, 2004. However, Plaintiff is not aware of how the promotion process took place in regards to approval by the Regional Vice President or whether the District Manager recommended him. [Rodgers Aff. ¶ 21] Plaintiff admits that Ron Phillips was the Regional Vice President during his employment with Defendant. Plaintiff admits that the General Manager of the store was responsible for all areas of operation, the performance of the store and the associates. Plaintiff admits that the General Manager would assign specific tasks to the Associate Managers such as managing food costs or scheduling employees and retained ultimate responsibility for making sure that the store performed up to expectations.

Plaintiff admits that he was evaluated by the General Manager, Tom Speziale. On the January 7, 2004 evaluation Plaintiff received an Overall Performance Rating of 3 but Plaintiff did not receive all 3s, he had three 4s and two 5s.[01/30/04 Evaluation]. The January 7, 2004 evaluation was not the last Evaluation that Plaintiff received from Tom Speziale. Plaintiff received another evaluation by Mr. Speziale on July 30, 2004. Therefore, the statement regarding his last evaluation is inaccurate. [0730/04 Evaluation - Plaintiff's Ex. F]. By the July 30, 2004 evaluation on page 16 of 17 Mr. Speziale stated in the improvements

6

from last Evaluation section, " I have not worked a great deal with Dwight over the past 6 months. I have however had several discussions and meetings with Dwight. He has grown.  I have ascertained this by the content and questions fielded. [Plaintiff's Ex. F].   In addition, he demonstrates strengths in Leading and Development through communication, providing feedback and uses situational leadership skills [Plaintiff's Ex. F. p. 3].  He also has strengths in building guest and maintaining guest relations [Plaintiff's Ex. F. p. 5].  Plaintiff exhibits strengths in Planning and Supervising operations and Safety and Security and Sanitation. [Plaintiff's Ex. F. p. 6] On page 9 of the evaluation he is described as a quality individual who has worked to overcome the operational obstacles.  And finally he was described as an Excellent communicator and motivator.  Should do well as GM [Plaintiff's Ex. F. p. 16].

Plaintiff admits to being promoted as GM on September 4, 2004.  Plaintiff did not obtain the position in Georgia because Defendant had already hired another individual but was invited to apply for the Gardendale Store.  Plaintiff did in fact interview for the position and was hired based on his qualifications. [Rodgers Aff. ¶ 25].  Plaintiff is not aware whether he was hired over Caucasian candidates and the affidavit of Rich Alexander is self serving. [Rodgers Aff. ¶ 26].

**D.     Plaintiff's Performance Problems In Gardendale.**

**1.     Plaintiff Performed Poorly In Objective Financial Areas.**

Plaintiff's management of the store's financial areas is reflected in the bonus' received by Plaintiff. [Plaintiff's Ex. G].  During Plaintiff's Tenure until the time he relocated, he received bonus' at the Gardendale store despite his predecessor's termination for doctoring the numbers. [Rodgers Aff. ¶ 27].  Plaintiff did not try to blame his predecessor.  Plaintiff explained that the numbers included those that had been misrepresented by his predecessor which in fact he was not responsible for since he was not at the store at that time. [Rodgers Aff. ¶ 27].

Plaintiff as GM assessed the skills of the individuals that reported to work for him, which was part of his role as GM.   [Rodgers Aff. ¶ 28]. He had assessed that despite the number of years at Cracker Barrel, they did not perform up to Defendant standards. [Rodgers Aff. ¶ 28].  The Gardendale team had been in place there for some  time but they lacked experience and ability.  Plaintiff admits to the names and individual titles of the staff at the Gardendale store when he arrive. Patterson was experienced however, he was on final written warning for his knowledge and participation with Plaintiff's predecessor and was not allowed to interview for the GM position after several requests to be interviewed. [Rodgers Aff. ¶ 29]. Plaintiff

8

admits to being ultimately responsible for ensuring the store met its objectives. Plaintiff was limited in this endeavor after the investigation took place, by not being allowed to discipline his employees. [Rodgers Aff. ¶ 30]

## 2.    Plaintiff Also Was A Poor Leader.

Plaintiff denies failing at leading the management team.  Plaintiff stated that there were changes made in the best interest of the company which were not welcome by the employees.  The Team simply had problems and did not want to work for an African American male, specifically Tommie Paterson. [Rodgers Aff. ¶ 31 and Defendants Ex. H].  The managers logged complaints against Plaintiff because they did not want to be accountable to him and created turmoil which made it difficult to manage the team. [Rodgers Aff. ¶ 31].  Plaintiff denied all the allegations logged against him. [Rodgers Aff. ¶ 31].

Plaintiff was not made aware of an upcoming meeting, prior to it being held. He was not told to come to the meeting which was uncommon for the company.  As Plaintiff stated this was an unusual meeting. [Plaintiff depo. p. 164 -165].  Plaintiff admits that these are the issues that were brought to his attention by Rich Alexander but since he was not at the meeting or invited he cannot state that these were the concerns expressed. [Rodgers Aff. ¶ 32].  Plaintiff met with Rich Alexander to

9

discuss the meeting.   Mr. Alexander started the meeting with "this is not a witch hunt."

### E.    Plaintiff's Supervisor Counseled Him But He Did Not Respond.

Plaintiff admits that he was to be evaluated by his supervisor.  Plaintiff was being coached for what his associates believed were performance problems not for actually performance problems. [Rogers Aff. ¶ 33] Plaintiff felt that the employees wanted to be pampered and since he had not done that, they complained about his supervisory skills. [Rodgers Aff. ¶ 33].  However as a good employee he was always willing to take criticism and to make improvements. [Rodgers Aff. ¶ 34]. Plaintiff stated that he and Mr. Alexander met numerous times to discuss the behaviors of his staff.  There tended to be a great deal of pushback by his staff. [Rodgers Aff. ¶ 34].  Plaintiff admits that he discussed the employees concerns with Mr. Alexander.  [Rodgers Aff. ¶ 35]

Plaintiff admits that he received a negative evaluation, but he also received bonus' based on performance.   Plaintiff admits that Rich Alexander made statements, he vehemently disagreed with them and the motivation for them. [Rodgers Aff. ¶ 35]

10

Plaintiff did followed the advice of Mr. Alexander and put together a plan to further improve his performance. [Rodgers Aff. ¶ 36 and Plaintiff's Ex. H]. Plaintiff always took full responsibility for his actions. [Rodgers Aff. ¶ 36]. Plaintiff did not set out not prove that his Associate Managers were at fault. Plaintiff in fact administered an evaluation with similar results for Tommie Patterson based Rich Alexander's assessment of the store. No action was ever taken against Mr. Patterson. [Rodgers Aff. ¶ 37].

Plaintiff disagreed with the decision of Rich Alexander to meet with the managers without notifying him.  This was uncommon and had never happened to other manager under Mr. Alexander's supervision. Plaintiff questioned the other managers and Ron Phillips who verified that no other managers had been subjected to this type treatment. [Plaintiff's Depo.  p. 182 and Rodgers Aff. ¶ 38].   The managers were allowed to go to Mr. Alexander with problems and were never directed to go to Plaintiff, their immediate supervisor to work it out, thereby undermining Plaintiff's ability to manage his staff. [Plaintiff's Depo. p. 182 and Rodgers Aff. ¶ 38].  Plaintiff admits that the team members that wanted too work with him were able to resolve their issues with him.  Plaintiff admitted that the staff had improved but as he noted he was General manager and it was his responsibility

11

to run the store including the staff despite what they felt about him.  [Rodgers Aff. ¶ 39].

###    F.    Plaintiff's Transfer To Montgomery And His Continued Poor Performance.

Plaintiff received one evaluation and a write up during his tenure at the Gardendale Store.  His conversations with his managers does not point to poor performance.  Plaintiff was simply being targeted by Rich Alexander. [Rodgers Aff. ¶ 40].  Plaintiff performed at a brand new store with such high employee turnover. [Rodgers Aff. ¶ 40] Plaintiff lost ninety-four (94) employees from June 14, 2005 to August 1, 2005, many left without giving notice or no call/no show. [Plaintiff's Exs. J and K].   The store did not perform well and still does not to this day. [Rodgers Aff. ¶ 40]. The second unit in Montgomery that is less than 6 miles away was recently closed because of poor sales. [Rodgers Aff. ¶ 40].   Ultimately the performance of the store was Plaintiff's responsibility, however, high turnover and the market played a major factor in sales and store performance, not Plaintiff's managerial skill. [Rodgers Aff. ¶ 40].

Plaintiff arrived to take over a staff that recently had their General Manager fired and others under a disciplinary cloud. [Rodgers Aff. ¶ 41].  Plaintiff believed

12

that his management staff was not suited for that store since most were transferred in on final written warning for behaviors issues. This Store also had all new employees since it was a new store. [Plaintiff's Depo. pgs. 254-256]. Associate manager Carlos Browing was on final written warning when transferred to the new unit; Associate Ashley Moore was on final written when transferred to the new unit; Associate Brian Thomsen was on final written warning when transferred and Associate Richard Peek was under investigation when transferred to new unit. [Rodgers Aff. and Plaintiff's Depo pgs. 259-260] Mr. Alexander knew this when he placed Plaintiff in the unit.  [Plaintiff's Depo. p. 260 and Rodgers Aff. ¶ 41]. Plaintiff was set up to finally fail. [Rodgers Aff. ¶ 41].  Plaintiff was provide with a Store Opening Supervisor and a Retail Opening Supervisor but they only remain with the store for two weeks and then they moved to the next store. [Plaintiff's Depo. p. 399].  After only two weeks in the store Mr. Alexander again alleged irregularities in order to discipline Plaintiff.  However he presented them all in one memo, covering a time period and had not brought  each of these issues up as they were alleged to have occurred. [Rodgers Aff. ¶ 42].  Plaintiff asked to meet with Ron Phillips to discuss the disparate way he was being treated by Rich Alexander

and to address sales could not be met due to a hiring freeze that Rich Alexander placed on the area he managed. [Rodgers Aff. ¶ 42 and Plaintiff's Depo. p. 371].

Plaintiff made no excuses for his behavior and explained what he perceived as misrepresentations made by Rich Alexander. [Plaintiff's Ex. L]. Plaintiff explained that he was not spending too much time in the office and that complaint had not been made against him as was alleged by Alexander. [Plaintiff's Ex. L]. Plaintiff explained that he did not call an associate in so that he could run a personal errand as alleged. He indicated that he communicated with Mr. Alexander the whole time about the situation. [Plaintiff's Ex. L]. Plaintiff denied that he failed to inform Mr. Alexander of a schedule changed.[Plaintiff's Ex. L]. Defendant states that Mr. Phillips approved the counseling but submits the affidavit of Mr. Alexander. Plaintiff admits that the policy of Cracker Barrel is - "you try to address the issues as they come up providing an opportunity for counseling instead of just documenting two weeks of alleged infractions." [Plaintiff's Depo. p. 367].

Plaintiff was assisted by only one manager being brought in that was Mark from the Cullman Unit. Plaintiff admits that he was being coached by Mr. Phillips and Mr. Alexander. What was not acknowledged was the high turn over which contributed to customer complaints. [Rodgers Aff. ¶ 45].

14

Plaintiff denies blaming the Associate Managers.  He expressed concern that they were not following his direction.  Plaintiff was given a final warning that brought up concerns, however as plaintiff stated this warning did not address problems with a brand new restaurant with all brand new employees that opened with another Cracker barrel only 6 miles away.  Projected sales were not met due to Defendant's projections. [Plaintiffs Depo. p 283].  Also Plaintiff states that (29) twenty-nine guest complaints for a new store opening is not unusual for a brand new store. All new store openings had the same kind of numbers for guest complaints.   [Plaintiff's Depo. p. 284 and Plaintiff's Ex. M].  In fact the Pinellas-Clearawater store had 45 guest complaint in its 12th week open. [Plaintiff's Ex. M]. Plaintiff also was not able to staff the store properly because Mr. Alexander put a freeze on staff hiring, which contributed to labor goals not being met. [Plaintiff's Ex. N].

### G.    Plaintiff's Termination

Defendant stated that Plaintiff was terminated because his performance continued to fall below expectations of General Manager.  Plaintiff admits that Defendant used these terms to terminate him.  Plaintiff denies missing deadlines. Plaintiff was prepared but the retail portion was not because the retail supervisor

15

was unavailable [Plaintiff's Depo p. 298]. Plaintiff stated he did not recall whether an outline was emailed to him because the report was nine weeks from the date of his termination letter [Plaintiff's Depo p. 299]. Plaintiff does dispute that he had an associate leave a voicemail, he stated he did not know whether the associate manager had left the voicemail but he did not state that he asked the associate to leave the voicemail. [Plaintiff's Depo. p. 307]. Plaintiff dispute the fact that he sent statements "late" to Human Resources. He said they were sent and he told Mr. Alexander they were already gone prior to the statement by Mr. Alexander. [Plaintiff's Depo. p. 308-309].

Plaintiff was not expected to be on this phone call as the Labor manager was on the conference call. [Rodgers Aff. ¶ 48]. However Plaintiff was in the process of moving he checked out of the Wingate Inn on July 19, 2005 to pack and move. [Plaintiff's Ex. O]. At this point Mr. Alexander used every excuse to discipline Plaintiff that he could muster. Plaintiff admits that he was given the termination notice at termination and that is when he was made aware of the reasons for termination. [Plaintiff's Depo. p. 296]. Plaintiff can not admit or deny whether he was replaced by an African- American, whom Alexander hoped would apply but chose not to apply. Defendant has only proffered the self-serving affidavit of Mr.

16

Alexander.  In response to the footnote attached to the statement regarding the new hire, Plaintiff interviewed with Ruby Tuesdays, a Mr. James Albi and truthfully informed him of the termination and the EEOC complaint. [Rodgers Aff. ¶ 49].

### H.    Plaintiff's Allegations Regarding The Tommie Patterson Incident.

Plaintiff claims that his inquiry into the comment by Tommie Patterson resulted in numerous disciplinary actions leading to his termination. [Complaint ]. Plaintiff does not claim that two of his aunts died, during his employment with Defendant.  He in fact had more than one relative pass away and Defendant's callous statement does not make it less truthful. [Rodgers Aff. ¶ 50].  Plaintiff called the store, Tommie Paterson answered the phone and Plaintiff explained his situation. [Plaintiff's Depo. p. 200 and Rodgers Aff. ¶ 51].  Mr. Patterson's later explanation about what he believed about African -Americans did not make his statement any less offensive. Patterson statement was not responsive to Ms. Schmidt question and was stated because he felt comfortable that he was in a situation where only White persons were within hearing range. [Rodgers Aff. ¶ 51 and Defendant's Ex. H].Patterson's concern about having to work an extra shift and not that Plaintiff had a death in the family is an example of the lack of team concern for Plaintiff. [Rodgers Aff. ¶ 52].  In fact as per usual policy no flowers were sent to

17

Plaintiff by the company, instead some volunteers from his store sent them on their own behalf. [Rodgers Aff. ¶ 52 and Plaintiff's Ex. P].  Ms. Schmidt stated that Plaintiff did not stand a chance at the store.  She stated that the managers were constantly talking about not wanting to work with Plaintiff and that a number of complaints came from a white male named Bill who worked for Georgia power and did not like Plaintiff because he was black. [Defendant's Ex. H].  This customer would come and check the power for the store but when he was not working he expected to be able to walk around the store in areas that he was not allowed to. Plaintiff stopped this and this caused the guest to complain.[Plaintiff's depo and Rodgers Aff. ¶ 5

Mr. Alexander spoke with Penny Schmidt and told her that he did not think the comment, made by Patterson was meant to be offensive. [Def. Ex. H].  This is far from investigating a complaint.  Patterson was on final written warning but was told that future comments could cost him his job. [Rodgers Aff. ¶ 54].Patterson did not apologize to Plaintiff, he was aware that Plaintiff knew about the comment because Ms. Schmidt reported it to Plaintiff, and Alexander did not recommend that he apologize to his manager. [Alexander Aff. ¶ 42].

Plaintiff complained that the investigation was not properly addressed because it took more than the 10 days required. Plaintiff was not informed of the outcome and no one thought to recommend that Patterson apologize to the person the comment was directed at. [Rodgers Aff. ¶ 55 and Alexander Aff. ¶ 42] Plaintiff heard a portion of the comment and was given all of the details prior to reporting it. [Rodgers Aff. and Exhibit H]. Plaintiff inquired into the status of the complaint on at least six separate occasions. [Plaintiff's Ex. I]. Plaintiff did not complain about the remedial action taken after Alexander's comment "don't forget who you work for" because he felt he should back off. [Plaintiff's Depo. p. 240].

## I. Plaintiff Did Not Report Discrimination Or Retaliation To Cracker Barrel

Plaintiff was being targeted. He complained of actions being taken against him. [Rodgers Aff. ¶ 56]. Plaintiff did not lie to EEOC about not having performance issues, Plaintiff believe that he was being targeted by Defendant with disciplinary actions. [Rodgers Aff. ¶ 56]

Plaintiff stated he was treated differently. His comments are not hearsay since he had information from the manager themselves when they had performance issues and Defendant has not proffered evidence to dispute this. [Plaintiff's Depo. pgs. 331-340]. The EEOC's statement is standard, not that they did not find cause

19

"only that they were unable to conclude that the information obtained establishes violation of the statute. This does not certify that the respondent is in compliance with the statute" [Plaintiff's Depo. Ex. 11].

## ARGUMENT AND CITATION OF AUTHORITY

### Summary Judgment Standard

Summary Judgment is proper when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56. The movant carries the initial burden and must show the court there is "an absence of evidence to support the non moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Only when that burden has been met does the burden shift to the non moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Clark v. Coates & Clark Inc.*, 929 F.2d 604, 608 (11th Cir. 1991), cert. denied, 514 U.S. 1096 (1995). The non movant is then required to go beyond the pleadings and present competent evidence in the form of affidavits, depositions, admissions and the like designating specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Lockaby*, 986 F.Supp. 1400.

20

To survive summary judgment, an employee needs only make out a *prima facie* case and present sufficient evidence of pretext. Thus, even though he failed to provide direct evidence of discrimination, evidence of pretext is enough to survive summary judgment. *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957 (11th Cir. 1997).

However, Plaintiff has direct evidence of discrimination based upon incidents of racial harassment and the disparate treatment he was subjected to by his employer when he complained of and inquired into the status of a purported investigation of a discrimination comment Plaintiff had reported. His supervisor who was supposed to investigate the incident, when asked by Plaintiff, threateningly told Plaintiff "Don't forget who you work for." [Plaintiff's Depo. p. 239-241]. This is direct evidence of discrimination by the decision maker and therefore Defendant's Motion for Summary Judgment should be **denied.**

Defendant generated poor performance complaints against Plaintiff by placing him in a new store with employees that were considered disciplinary problems and with a white male employee, Tommy Patterson, who had worked at the store a number of years and had been overlooked for General Manager position.

21

Plaintiff's complaint and amended complaint have two counts and within those counts the Plaintiff makes claims of racial and willful discrimination, harassment, disparate treatment and retaliation.  Plaintiff's amended his complaint to add claims pursuant to §1981 instead of §1983 recognizing that there is no state action that the Defendant is a private actor.  Plaintiff alleged harassment in his EEOC complaint via the numerous disciplinary actions as well as retaliation claim.

**A.    Plaintiff's Title VII Race Discrimination Claim Is Not Due To Be Dismissed**

**I.    Plaintiff Can Establish A Prima Facie Case.**

To be entitled to direct evidence analysis, the Plaintiff must present evidence of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the fact finder to infer that, that attitude is more likely than not a motivating factor in the employer's decision making.  *Rivers- Frison v. Southeast Missouri Community Treatment Center*, 133 F. 3d 616 (8th Cir. Jan. 7, 1998).  Plaintiff has direct evidence of the motivation for the disciplinary actions taken against him in the aftermath of his complaint and the threatening statement by the decision maker when he inquired into the status. of a purported investigation.

22

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where direct evidence of discrimination is unavailable, a Title VII plaintiff may nonetheless present circumstantial evidence of discrimination sufficient to create a jury question. In reviewing Title VII claims that are supported by circumstantial evidence, we use the familiar McDonnell Douglas / Burdine three-step burden-shifting framework. Under this framework, the plaintiff shoulders the initial "burden ... of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). If a prima facie case has been shown, then the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." Id. If this is accomplished, the plaintiff may then attempt to demonstrate that the proffered reason was in fact merely a pretext for the defendant's actions. See *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093 (1981). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id*.

23

Defendant discriminated against Plaintiff Rodgers in violation Title VII of the Civil Rights Act of 1964, as amended, The Civil Rights Act of 1991 and 42 U.S.C. § 1981, and willful racial discrimination, harassment, disparate treatment, and retaliation under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended , the Civil Rights Act of 1991.  Plaintiff alleges a continuing violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., as amended, the Civil Rights Act of 1991.  To establish a *prima facie* case of employment discrimination under Title VII plaintiff has to show: (1) that he is a member of a protected class; (2) that he was qualified for the position; (3) that an adverse employment action was taken against him; and (4) that the employer treated similarly employees outside the protected class more favorably..   42 U.S.C. § 12112(a), *Wood v. Green*, 323 F. 3d 1309 (11th Cir. 2003), *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).  Plaintiff is a member of a protected class African American, he is qualified for the position, he was terminated which is an adverse employment action and the employer treated similarly situated employee outside the protected class more favorably.

First, Plaintiff did not lie about his qualifications for the job.  Plaintiff met and interviewed with a recruiter for Defendant. [Rodgers Aff. ¶ 15].  He did not

represent in this interview that he had a bachelor's degree. [Rodgers Aff. ¶ 15]. He stated than, as he stated in his deposition that he was working towards his degree while in the military and while married to his former wife who was also in the military. [Plaintiff's Depo. pgs. 69-72]. The resume submitted through the employment search engine monster.com is a fill in the blank form. In regards to choosing a degree, you are required to enter the highest level achieved or that which you are pursuing with the completion date. As the Resume states on page 3 he has completed 3.5 years of his bachelor's degree. [Plaintiff's Ex. B].. Plaintiff therefore did not lie about his college degree. Plaintiff had success with RTM and Bojangles, however he was not a restaurant manager at Bojangles, he was a unit training manager. With RTM, Plaintiff resigned from his position and its states this clearly on the background check and the letter submitted by Plaintiff to RTM. [Plaintiff's Exs. A and D]. Also Plaintiff as stated was unit manager with Bojangles. It was his job to go to problem stores and correct the problems. [Plaintiff's Depo. p. 42] The write ups he received were necessary to document what was happening at the store but not a reflection of plaintiff's performance. [Rodgers Aff. ¶ 17] They were all written from different stores and by the same person, who would have been aware of claimed "numerous write ups". Also he was never suspended. The section

25

Defendant points to does not say Plaintiff was suspended it states that whether employee understands consequences of behavior and suspension is checked off. [Bojangles Records ## 23, 33, 29-41]    However, plaintiff was not suspended. Plaintiff was more than qualified.  Additionally, Defendant was aware of Plaintiff's background since they did a background check in addition to the initial interview, which demonstrates that they contacted both employers and Plaintiff was eligible for rehire at both positions. [Plaintiff's Exs. A and E]

Plaintiff had more than one evaluation with the Defendants and his last evaluation shows that his supervisor recognized that he witnessed growth from Plaintiff. [Plaintiff's Ex. F].  Plaintiff's first negative evaluation cannot be viewed in isolation so as to eliminate it as an adverse employment action.  Plaintiff's evaluation was adverse because of his complaint to Human Resources in addition to the complaints he was making about his staff members.  Defendant has attempted to justify them on the basis that they were designed to point out weaknesses for improvement.  While negative performance evaluations standing alone, do not constitute adverse employment action sufficient to satisfy a prime facia case. Lucas v. Grainger, Inc. 257 F3rd, 1249, 1262 (11th Cir. 2001) (citing Silk v. City of Chicago, 1904 F 3rd 788, 802-03 (7th Cir 1999).  There is no dispute that the

26

evaluation and disciplinary actions here are adverse, the issue is whether this was a lone act complained of and standing alone which would not constitute an adverse employment action sufficient to satisfy the prime facia case. The answer is that the acts complained of were harassment and disparate treatment, which then resulted in Plaintiff's termination.  They are mere fruits of the unlawful scheme.

Thus a genuine issue of material fact exist as to whether the evaluation constitutes an adverse act and if so is this act a stand-alone act, unconnected to any other acts that would give rise to an inference that it is insufficient to satisfy a prime facia case.

Plaintiff provided the Defendant with specific examples of individuals that had poor performance who were not disciplined.  Each of the individuals were General Managers under Rich Alexander. [Rodgers depo. pgs. 331 - 340]. Plaintiff was the only African American General Manager that worked under Rich Alexander who received repeated disciplinary actions.  Others were not being documented or disciplined therefore there is evidence of a multitude of problems but they were not being documented.  Defendant proffered no evidence of this to refute Plaintiff's claim.  Plaintiff's evidence was far from vague, inadmissible or irrelevant.  It was clearly relevant to similarly situated employees which is why the

Defendant posed the questions.  During the deposition Plaintiff provided Defendant with individuals, which they failed to adequately address with reference to performance issues.  They did not provide evidence that the individuals did/did not have multiple disciplinary proceedings. [Rodgers depo. pgs. 331 - 340]. Defendant had access to all these individuals employment records since they all worked under Rich Alexander.  In addition, Plaintiff requested that Defendant provide him with documentation of individuals that had worked under Rich Alexander in similar positions to Plaintiff, and signed a protective order yet this information was not provided to the Plaintiff.

Once the Plaintiff has provided proof of prima facie case of discrimination the McDonnell-Douglas burden shifting test applies.  The allocation of burdens and order of presentation of proof are as follows. (1) the plaintiff has the burden of proving a prime facia case of discrimination by a preponderance of the evidence, (2) when the Plaintiff proves the prime facia case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action taken against the Plaintiff-employee; and (3) if the Defendant carries this burden, the plaintiff then has an opportunity to prove by a preponderance of the evidence that

28

the legitimate reason offered by the Defendant was a pretext for intentional discrimination. <u>McDonnell-Douglas Corp. v. Green</u>, 411 U. S. 792, 802, 804(1973).

Defendant's legitimate, nondiscriminatory reason for the action taken appears to be directed at Plaintiff's performance. However, Plaintiff has shown that there were four Caucasian General Managers under the supervision of Rich Alexander that were performing in the same level and were treated different from him. They were not given poor performance ratings, write-ups and they are still employed with defendant. Thus the nondiscriminatory reason for Plaintiff's termination is pretext for intentional discrimination.

## 2. Plaintiff Can Establish That Cracker Barrel's Actions Were Pretext for Discrimination.

Plaintiff can establish a causal connection between the adverse action taken against him, separation from employment, and him being a member of a protected class. Plaintiff was qualified for the position, which Defendants can not counter with a legitimate non-discriminatory reason for its action.

Cracker Barrel used discipline to discriminate against Plaintiff which Defendant then used to advocate terminating Plaintiff. Plaintiff is not second

guessing Defendant's assessment nor providing his own assessment of his performance.

The Supreme Court has observed that "precise equivalence in culpability between employees is not the ultimate question[,]" and, therefore, has directed the emphasis of the fact finder's inquiry to the question of "comparable seriousness." *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 283 n. 11, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) (Evidence of comparator employees involved in acts of "comparable seriousness [as the plaintiff] ... is adequate to plead an inferential case that the employer's reliance on his discharged employee's misconduct as grounds for terminating him was merely a pretext.") (internal quotations and citation omitted)

### B.    Plaintiff's Claim for Retaliation Is Not Due to Be Dismissed.

Title VII protects an employee against retaliation for engaging in activity that is protected under 42 U.S.C. 2000e. In the absence of direct evidence, a plaintiff may establish a prima facie case of retaliation in violation of Title VII by showing 1. an action or expression protected by Title VII, 2. an adverse employment action, and 3. a causal connection between the protected activity and the adverse employment action. Harriston v Gainesville Sun Pub Co., 9 F 3d 913, 919 (11th Cir

30

1993).  Plaintiff can establish all three of these elements.  Additionally, Plaintiff can establish his claim under the opposition clause.

Under Title VII, it is an unlawful employment practice for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). As with a discriminatory treatment claim, a plaintiff alleging a retaliation claim under Title VII must begin by establishing a prima facie case; the plaintiff must show that (1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities. Coutu v. Martin County Bd. of County Comm'rs, 47 F.3d 1068, 1074 (11th Cir.1995) (per curiam).

First, Plaintiff engaged in statutorily protected conduct.  Plaintiff filed a complaint on behalf of himself and an employee who had overheard a derogatory statement directed at Plaintiff. He did not hear the full statement and therefore did not file on his own behalf but, what he did hear was confirmed by Associate Penny Schmidt, Caucasian Female. [Defendant's Ex. H]. He opposed this behavior as did

the employee and filed the complaint.  See *Borgo v. Goldin*, 204 F.3d 251, 255 n.4 (D.C. Cir. 2000) (concluding that employee's activity came under opposition, rather than participation clause, because she complained of retaliation "not against her official EEO complaints, but against [the] memorandum she wrote to her supervisor opposing discrimination she perceived from him").

He then inquired into the investigation on at least 6 occasions with no response from the Defendant. [Plaintiff's Exhibit I].  Defendant now claims that the investigation was conducted but there is no evidence other than the self serving affidavits submitted.  Penny Schmidt Witness statement submitted to the EEOC does not state there was an investigation, merely that Rich Alexander asked her about it and how she felt about the comment and told her that he thought Tommie Paterson was not being discriminatory.  That ended the statement clearly ended the investigation if there in fact there was one. [Defendant's Ex. H].

Under the opposition clause the Plaintiff can show that he had a "good faith, reasonable belief" that his employer engaged in unlawful discrimination.  Plaintiff's case has subtle differences that distinguish it from the Little v. United Techs., case.  First, in *Little*  the conversation was only between two white males, not overheard by any individual.  Plaintiff herein overheard the comment being made as did the

32

person on whose behalf he reported the derogatory slur.  Second *Little,* waited for 8 months to even mention the comment did not report it as an incident to be investigated.  Plaintiff as the supervisor of both individuals reported the incident only a few days after it occurred upon his return from a funeral, March  of  2005.  Finally, in Little, that was the one and only action mentioned by *Little*.

The actionable conduct was not solely the one comment by Tommie Patterson but ignoring of the complaint by the Defendant.  The failure to inform Plaintiff of the status of the investigation.  The failure by Defendant to interview Plaintiff as a part of the investigation.  The numerous disciplinary actions  as a result of the complaint and inquiries into the investigation.  Finally, the discharge of the Plaintiff.  Tommie Patterson's behavior was sanctioned by Defendant, by failing to take any action even according to their own regulations.

Plaintiff satisfies the third prong of the prima facie case of retaliation by showing that there is a causal connection between the statutorily protected activity and the adverse action.  To prove a causal connection, this Circuit requires a plaintiff only to demonstrate "that the protected activity and the adverse action were not wholly unrelated." *Farley v. Nationwide Mutual Ins. Co.*, 197 Fed 1322, 1337 (11th Cir. 1999) (quoting *Clover v. Total System Services*, 176 F.3d 1346, 1354 (11th

33

Cir. 1999).  Plaintiff can show that before the complaint he had been promoted an

his record was unblemished, afterward he was constantly written up and disciplined.

He was subsequently transferred and terminated shortly thereafter.

### C.    Plaintiff Amended His Complaint To Substitute § 1981 Claims for § 1983

Plaintiff's complaint did assert a claim under 44. U.S.C. § 1983, however

Plaintiff intended to file an amended complaint specifically to amend his complaint

to add claims pursuant  to 42 U.S.C. §1981 instead of § 1983.  Plaintiff had

originally argued that the claims were actionable under 42 U.S.C. § 1983, however

Plaintiff acknowledges the Defendant is a private entity and not a governmental

entity and thus is not subject to section 1983.   Plaintiff alleges a continuing

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., as

amended, the Civil Rights Act of 1991, and  42 U.S.C. § 1981 and 1981 (a).

### D.    Hostile Work Environment

In looking at plaintiff's hostile environment claim, circumstances must be

viewed in their totality and the effect they would have on a reasonable person.

In  determining whether an environment is sufficiently hostile or abusive as

to be actionable under the statute, the courts must look at the circumstances,

including the frequency of the discriminatory conduct, it is severity, whether it is

34

physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Faragher v. City of Boca Raton, 524 U.S. 787, 118 S Ct 2283, in addition, a plaintiff must prove that the environment is both objectively and subjectively offensive and one that a, reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. Faragher, 524 U.S. 787, Harris 510 U.S. 21-21; Fleming v Boeing Co. 120 F3d 242, 245 (11th Cir 1997).

Plaintiff asserted that he was subjected to disparate treatment at the hands of Defendant in certain particulars one of which was illustrated by the hostile work environment. Plaintiff can establish a claim of hostile work environment based on all 5 prongs. 1) Plaintiff was a member of a protected group; 2) he was subjected to the unwelcome harassment of the numerous disciplinary actions; 3) no other general manager working under Rich Alexander was subject to the same scrutiny and Plaintiff was the only African American General manager under his direction; 4) the harassment was sufficiently severe that he prevented him from doing his job as a General Manager of the store; and 5) his basis for holding the employer liable is that they subjected Plaintiff to the adverse action.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals race, color, religion, sex, or national origin.42 U.S.C. Sec 2000e 2(a)1. The prohibition is not limited to "economic" or "tangible" employment decisions but also "includes requiring people to work in a discriminatory hostile or abusive environment." Harris vs. Forklift Systems Inc., 510 U. S. 17, 21 (1993); Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S Ct 2275, 2283 (1998).

Defendant, attempts repeatedly to claim the comment by Tommie Patterson is the single act of misconduct.    However, Plaintiff's complained of numerous comments by others and his supervisor [Plaintiff's Depo. p. 209].

**E.    Plaintiff's Claim For Damages Is Limited By After-Acquired Evidence**

Plaintiff as stated and proved above with Defendants own evidence did not lie about his qualifications, nor about any disciplinary actions from previous employers.  In addition, none of this information is after-acquired.  Defendant spoke with Plaintiff's previous supervisors and they both stated that he was eligible for rehire, that he had excellent skills and that he was highly recommended to the Defendant. [Plaintiff's Exs. A and E].  If in fact Plaintiff had been terminated or had

36

been a disciplinary problem, his previous employer would have relayed this information at the background check.  The paperwork received by Defendant after the deposition without inquiry or explanation, illustrates the lengths Defendant will go to disparage Plaintiff without corroborating evidence.  Defendant did not learn of any misconduct during its investigation and/or litigation of the claim that is a legitimate basis for discharging the employee.  Defendant is attempting to inaccurately depict the work history of Plaintiff, when in fact Defendant conducted a background check, in an effort to justify their discriminatory treatment of Plaintiff.  Defendant never asked Plaintiff to explain the information that was provided to them.

In *McKennon v. Nashville Banner Publishing Co.*, U.S., 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995), a case involving an alleged violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), the Supreme Court held that after-acquired evidence of wrongful conduct during employment that would have resulted in termination does not "operate[], in every instance, to bar all relief for an earlier violation of the Act." Id. at, 115 S. Ct. at 884. The Court held, however, that "the after-acquired evidence of the employee's wrongdoing bears on the specific remedy to be ordered." Id. at, 115 S. Ct. at 885. The Court determined that in cases

37

in which an employee commits an act during employment that would lead to termination and the employer finds out about the act during the course of litigation, "neither reinstatement nor front pay is an appropriate remedy." Id. at, 115 S. Ct. at 886. The Court then discussed backpay, holding that it should be calculated "from the date of the unlawful discharge to the date the new information was discovered," with the court "taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party." Id.

Plaintiff did not lie about his employment history nor did he lie about his educational background. Additionally, Plaintiff did not commit an act during the course of his employment, which the Defendant later found out about. Defendant did not learn about a wrongdoing that would lead to a legitimate discharge, Each of the actions uncovered by Defendant have been explained and do not contradict that which was stated by the previous employers when Defendant did its background check.

It is clearly disputed that Plaintiff did not lie about his education and employment history to Defendant. Plaintiff disputes that he lied about his qualifications which is why he was hired by Defendant. Thus Plaintiff can recover front pay, reinstatement or any injunction against the Defendant. There is no

38

limitation on backpay again because Plaintiff did not lie. Therefore summary judgment should not be granted in favor of Defendant on Plaintiff's claims for damages.

## CONCLUSION

Plaintiff has professed direct evidence of discrimination and indirect evidenced to establish a prima facie case of discrimination. Plaintiff has offered evidence of pretext to refute Defendant's claim of a legitimate non discriminatory reason for his discharge.

For all of the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgment in this case.

Respectfully submitted, this 27th day of August, 2007.

Respectfully submitted,
/s/Byron Perkins
Byron Perkins
State Bar No. ASB - 0183 - N75B
Attorney for Plaintiff

The Cochran Firm
505 North 20th Street - Suite 825
Birmingham, Alabama 35203
(205) 244-1115
(205) 244-1171 fax
email: Bperkins@CochranFirm.com

s/Monica A. York
Monica A. York
State Bar No. 781153
Attorney for Plaintiff

ATTORNEYS
BREEDLOVE & LASSITER, LLP
250 East Ponce de Leon Avenue
Suite 425
Decatur, Georgia 30030
(404) 377-5512 (telephone)
(404) 377-5515 (facsimile)
myork@breedloveandlassiter.com

40

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

DWIGHT RODGERS,        )

                              )

      Plaintiff,          )     CIVIL ACTION NO.:

                              )     2:06-CV-1067-WKW-SRW

                              )

v.                        )

                              )

CRACKER BARREL OLD     )

COUNTRY STORE, INC.,    )

                              )

      Defendant.       )

## CERTIFICATION

Pursuant to Local Rule 7.1(D), I certify that this Brief in Opposition to Defendant's Motion for Summary Judgment has been prepared with one of the fonts and point selections (Times New Roman 14") approved by the.

                             Respectfully submitted,

                             /s/Byron Perkins

                             Byron Perkins

                             State Bar No. ASB - 0183 - N75B

                             Attorney for Plaintiff

The Cochran Firm
505 North 20th Street - Suite 825
Birmingham, Alabama 35203
(205) 244-1115
(205) 244-1171 fax
email: Bperkins@CochranFirm.com

41

s/Monica A. York
Monica A. York
State Bar No. 781153
Attorney for Plaintiff

ATTORNEYS
BREEDLOVE & LASSITER, LLP
250 East Ponce de Leon Avenue
Suite 425
Decatur, Georgia 30030
(404) 377-5512 (telephone)
(404) 377-5515 (facsimile)
myork@breedloveandlassiter.com

42

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| DWIGHT RODGERS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.: |
| | ) | 2:06-CV-1067-WKW-SRW |
| | ) | |
| v. | ) | |
| | ) | |
| CRACKER BARREL OLD | ) | |
| COUNTRY STORE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2007, I placed in US mail **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** to the following attorneys of record and electronically filed same using the CM/ECF system on August 31, 2007:

Jennifer Busby
Ashley H. Hattaway
Burr & Forman LLP
3400 Wachovia Tower
420 North 20th Street
Birmingahm, Alabama 35203

Respectfully submitted,
/s/Byron Perkins
Byron Perkins
State Bar No. ASB - 0183 - N75B
Attorney for Plaintiff


The Cochran Firm
505 North 20th Street - Suite 825
Birmingham, Alabama 35203
(205) 244-1115
(205) 244-1171 fax
email: Bperkins@CochranFirm.com


s/Monica A. York
Monica A. York
State Bar No. 781153
Attorney for Plaintiff


ATTORNEYS
BREEDLOVE & LASSITER, LLP
250 East Ponce de Leon Avenue
Suite 425
Decatur, Georgia 30030
(404) 377-5512 (telephone)
(404) 377-5515 (facsimile)
myork@breedloveandlassiter.com


44

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| DWIGHT RODGERS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.: |
| | ) | 2:06-CV-1067-WKW-SRW |
| | ) | |
| v. | ) | |
| | ) | |
| CRACKER BARREL OLD | ) | |
| COUNTRY STORE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF DWIGHT RODGERS EVIDENTIARY SUBMISSION IN
SUPPORT OF HIS OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Dwight Rodgers, and submits its evidentiary submission in support of his Opposition to Defendant's Motion for Summary Judgment, file contemporaneously herewith:

Exhibit A:    Background Check of RTM Reference Report

Exhibit B.    Plaintiff's monster.com Resume

Exhibit C:    Bojangles Employee Change Status Reports

Exhibits D:  Plaintiff's Resignation From Bojangles

Exhibit E:    Background Check of Bojangles Reference Report

Exhibit F:    July 30, 2004 Evaluation

Exhibit G:     Cracker Barrel Bonus Statements

Exhibit H:     Letter to Rich Alexander re: Performance Improvement Plan

Exhibit I:     Account of Complaint Filed With Hotline

Exhibit J:     Employee Turnover Tracking

Exhibit K:     Employee Listing

Exhibit L:     Letter to Ron Phillips

Exhibit M:     12th week New Store Opening

Exhibit N:     Ashley Moore EEOC Witness Statement

Exhibit O:     Wingate Inn Bill

Exhibit P:     Floral Note

               Plaintiff's Affidavit

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| DWIGHT RODGERS, | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| | ) | **2:06-CV-1067-WKW-SRW** |
| | ) | |
| v. | ) | |
| | ) | |
| CRACKER BARREL OLD | ) | |
| COUNTRY STORE, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 27, 2007, I placed in US mail **<u>PLAINTIFF DWIGHT RODGERS EVIDENTIARY SUBMISSION IN SUPPORT OF HIS OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>** to the following attorneys of record and electronically filed same using the CM/ECF system on August 31, 2007:

Jennifer Busby
Ashley H. Hattaway
Burr & Forman LLP
3400 Wachovia Tower
420 North 20th Street
Birmingahm, Alabama 35203

3

Respectfully submitted,

/s/Byron Perkins
Byron Perkins
State Bar No. ASB - 0183 - N75B
Attorney for Plaintiff


The Cochran Firm
505 North 20th Street - Suite 825
Birmingham, Alabama 35203
(205) 244-1115
(205) 244-1171 fax
email: Bperkins@CochranFirm.com


s/Monica A. York
Monica A. York
State Bar No. 781153
Attorney for Plaintiff


ATTORNEYS
BREEDLOVE & LASSITER, LLP
250 East Ponce de Leon Avenue
Suite 425
Decatur, Georgia 30030
(404) 377-5512 (telephone)
(404) 377-5515 (facsimile)
myork@breedloveandlassiter.com

4