IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DWIGHT RODGERS, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO: |
| | ) 2:06-CV-1067-WKW-SRW |
| CRACKER BARREL OLD | ) |
| COUNTRY STORE, INC., | ) |
| | ) |
| DEFENDANT. | ) |

### **DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS**
### **MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Cracker Barrel Old Country Store, Inc. ("Cracker Barrel"), and submits this reply brief in support of its Motion for Summary Judgment:

### **INTRODUCTION**

Plaintiff admits that Cracker Barrel's legitimate business reason for his termination is true - namely that he was responsible for the Gardendale and Montgomery stores and that there were performance problems in those stores. Plaintiff has plenty of excuses for his shortcomings, but he has <u>no evidence</u> that he was treated any differently than any other manager who did not perform to expectations. Instead, plaintiff makes fantastical and conclusory assertions about himself and others, but these assertions and hearsay statements are not sufficient to defeat defendant's properly supported motion for summary judgment.[1] The facts and the law warrant dismissal of all of his claims.

---

[1] In support of many of his assertions in his brief, plaintiff cites an affidavit. In fact, no affidavit was filed into the record by plaintiff, although one was mailed to defendant's counsel. Defendant has filed contemporaneously herewith a Motion to Strike that purported affidavit because it is not before the Court. Out of an abundance of caution, defendant addresses herein plaintiff's assertions in his Brief in Opposition to Defendant's

1600822 v1

### I. Plaintiff Concedes That His Section 1983 Claim Should Be Dismissed.

On page 22 of plaintiff's brief, he concedes that there was no state action and that thus there is no claim under §1983. Plaintiff first states that he "amended his complaint to add claims pursuant to §1981 instead of §1983." This is simply not true as is evidenced by the court record in this case. The only complaint ever filed in this case <u>does not</u> allege a violation of §1981, and there is no amended complaint. Recognizing this, the plaintiff later states in his brief that he only "intended" to amend his complaint to allege a §1981 claim. (Plt. Br., p. 34). Therefore, plaintiff has no cause of action under either §1983 or §1981.

### II. Plaintiff's Race Discrimination Claim Should Be Dismissed.

#### A. Plaintiff has no direct evidence of discrimination.

In support of his disparate treatment race discrimination claim, plaintiff alleges that Rich Alexander said to him "don't forget who you work for" and that the statement is direct evidence of race discrimination. This argument is at complete odds with the controlling law on this subject. Direct evidence is defined as that evidence which, if believed, proves the existence of a fact in issue without inference or presumption. <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1537 (11th Cir. 1997). Such evidence would include a blatant remark reflecting a discriminatory attitude and correlating to the discrimination complained of by the employee. <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1081-82 (11th Cir. 1990). Only the most blatant remarks, whose intent could be nothing other than to discriminate, constitute direct evidence. <u>Roberts v. Design & Mfg. Servs., Inc.</u>, 167 Fed. Appx. 82, 85 (11th Cir. 2006).

---

Motion for Summary Judgment, which may include some for which plaintiff cites the affidavit, because they are discussed in his brief to the Court; however defendant maintains and does not waive its objections to the affidavit and asserts that it should not be considered by the Court in this case.

The comment allegedly made by Mr. Alexander is not direct evidence of anything. The standard for what constitutes direct evidence is extremely high, and the cases make it clear that the alleged comment must be directly related to the employment action at issue. For example, in Roberts, a case involving alleged age discrimination, the plaintiff claimed that his supervisor told him "he was getting too old" and that he needed to spend more time "with [his] family and get back to playing golf." 167 Fed. Appx. at 84. The plaintiff also offered evidence that his supervisor often asked the plaintiff when he was going to retire, and at one point even told the plaintiff that "if it came to terminating [the plaintiff's] employment, [the plaintiff] would be sadly mistaken if he thought he could use age discrimination as the reason." Id. The Eleventh Circuit upheld the district court's determination that there was no direct evidence. Id. at 85. The court noted that "the alleged statements [could] be subject to more than one interpretation." Id. The court further noted that the supervisor "never stated that *he was going to fire [the plaintiff] because he was too old*" and that without this type of statement there could be no direct evidence. Id.; see also Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1081 (11th Cir. 2005); Carter v. City of Miami, 870 F. 2d 578, 582 (11th Cir. 1989). Even in Rivers-Frison v. Southeast Missouri Cmty. Treatment Ctr., 133 F.3d 616, 619 (8th Cir. 1998), the case cited by plaintiff, the court found no direct evidence of discrimination because the alleged remark "had no relation to [plaintiff's] employment status."

In this case, the alleged comment "don't forget who you work for" does not correlate to any employment action taken against plaintiff. Nor can this alleged comment can be interpreted as an intent to discriminate against plaintiff because of his race - it does not even have anything to do with race. Thus, it is not direct evidence of discrimination.

### B. Plaintiff has no circumstantial evidence of discrimination.

#### 1. Plaintiff's self-serving lies.

Plaintiff does not have any circumstantial evidence of discrimination. Thus, he cannot even establish a prima facie case of discrimination. First, he was not qualified for the job. As has been proven, he lied about his qualifications and was in fact not qualified for the General Manager job, as evidenced by the fact that he had been fired twice from that position before joining Cracker Barrel. In his brief he argues that he did not lie, but the record evidence proves otherwise.[2] This Court is not obligated to believe plaintiff's self-serving allegations about himself which contradict all of the other evidence; instead the plaintiff must present evidence on which a jury could <u>reasonably</u> find for him. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986); <u>Evans v. Stephens</u>, 407 F.3d 1272, 1283-84 (11th Cir. 2005) (Carnes, J., concurring specially); <u>Williams v. Rich</u>, 2006 WL 2534417, *4 (S.D. Ga. Aug. 30, 2006) (when a plaintiff "relies on his own self-serving allegations, the Court properly considers whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations'"). No jury could reasonably believe him when then mounds of objective evidence proves the falsity and absurdity of his stories and excuses.

---

[2] For example, plaintiff argues that he did not represent that he had a Bachelor's degree, but on page one of his monster.com resume, which he admits he completed, it says "Education: Bachelor's Degree." (Plt. Depo. Ex. 1). Plaintiff alleges that he resigned from RTM, but the authenticated RTM records reflect that he was terminated for violation of company policy. (RTM Records, #6). Plaintiff argues that the disciplines from Bojangles were a "reflection of the store" but not of his performance and that he was not terminated. Bojangles' authenticated records clearly show that he was personally disciplined numerous times and terminated for misrepresenting food cost expenditures and inventory. (Bojangles Docs; Plt. Ex. C, #31). To support his claim that he was never terminated, plaintiff points to a reference check that Cracker Barrel performed on plaintiff, but all that check shows is that by referring Cracker Barrel to another General Manager and a Training Coordinator, plaintiff kept Cracker Barrel from discovering the truth. (Plt. Ex. A, E).

Second, plaintiff's evaluation and counselings are not adverse actions in and of themselves because they did not involve any tangible job action. See Hooks v. Bank of America, 183 Fed. Appx. 833, 835-36 (11th Cir.), cert. denied, 127 S. Ct. 515 (2006); Davis v. Town of Lake Park, Fla, 245 F.3d 1232, 1241-43 (11th Cir. 2001). Even in the case cited by plaintiff, Lucas v. W.W. Grainger, Inc., the court held that "[n]egative performance evaluations, standing alone, do not constitute adverse employment action. . . ." 257 F.3d 1249, 1261 (11th Cir. 2001).

Plaintiff argues that the evaluation and counselings "are mere fruits of the unlawful scheme" to terminate plaintiff. In actuality and as best described by the Eleventh Circuit, they were "an ordinary and appropriate feature of the workplace" designed to improve plaintiff's job performance. Davis, 245 F.3d at 1242. As further explained by the Eleventh Circuit, the fact that plaintiff felt they were unwarranted does not make them adverse for purposes of a discrimination claim. Id. If Rich Alexander had not evaluated and disciplined plaintiff before he terminated him to give him a chance to improve, plaintiff undoubtedly would have complained about that too.[3]

### 2.     Plaintiff's suppositions and false conclusions.

Finally, plaintiff has no evidence that Cracker Barrel treated any employee similarly situated to plaintiff more favorably. Plaintiff attempts to point to individuals that he alleges had poor performance but were not disciplined; however, plaintiff admits he has no first-hand knowledge about these managers' performance. His claims that a manager missed one meeting (Greg), another was tardy once (Kevin) and another manager had some food thrown out on one

---

[3]     In his brief, plaintiff refers to the evaluation from Mr. Alexander as his "first negative evaluation." This is misleading because it was the only evaluation plaintiff received as a General Manager. His other evaluations were based on his performance as an Associate Manager, which plaintiff admits is different from the GM position. (Plt. Br., p. 6). Even plaintiff's evaluations as an Associate Manager were not particularly good - he never received higher than a "3" out of "5." (Alexander Aff. Ex. 2).

occasion (Kathy). (Plt. Depo. p. 332, ln. 8 - p. 333, ln. 19, p. 337, ln. 7 - p. 338, ln. 13). This conduct, even if true or admissible, is not comparable to the conduct for which plaintiff was disciplined. To be comparable, the "quantity and quality of the comparator's misconduct [must] be nearly identical." <u>Dawson v. Henry County Police Dept.</u>, No. 06-14640, 2007 WL 1893367, at *2 (11th Cir. July 3, 2007). Plaintiff's written warnings and termination were based on many different infractions - he was never disciplined for a single incident such as those described above. (<u>See</u> Plt. Depo. Ex. 6, 8, 13 & 15).

Plaintiff also makes another unsupported statement in his brief that he was the only African American General Manager that worked under Mr. Alexander who received repeated disciplinary actions. (Plt. Br., p. 27). This assertion by plaintiff that Mr. Alexander did not discipline other African American General Managers further proves that the problem was not plaintiff's race - it was plaintiff. Plaintiff claims that these other managers had "a multitude of problems but were not being documented." (Plt. Br., p. 27). There is absolutely no evidence of this - plaintiff does not provide even the names of any other managers, much less any evidence of any problems, but even if he did have evidence that these other African American managers had problems but were not disciplined, that evidence only <u>negates</u> his allegation of race discrimination.

### 3. Plaintiff's excuses.

Because plaintiff has no evidence his discrimination claim fails as a matter of law; but, even if he could establish a prima facie case of discrimination, he has no evidence of pretext. Cracker Barrel disciplined and terminated plaintiff for a legitimate, non-discriminatory reason - he had a multitude of performance problems even after he was given many opportunities to improve, including a transfer to a new store. Plaintiff's only argument that Cracker Barrel's

reason for termination was a pretext for discrimination is his completely unfounded statement that four Caucasian General Managers under Rich Alexander's supervision "were performing at the same level" as him. (Plt. Br., p. 29). Where is this evidence? If plaintiff is referring to the three managers he mentioned in his deposition, Greg, Kevin and Kathy, as discussed above, his hearsay allegations about their single alleged incidents of purported rule violations prove nothing. Although there is no admissible evidence of this, if Greg had missed one meeting, Kevin had been tardy once and Kathy had food that should have been discarded on one occasion, plaintiff is hallucinating if he thinks this means they "were performing at the same level as him."

In addition to missing meetings, being tardy and not discarding food, plaintiff failed to meet deadlines; had an unacceptable number of guest complaints and failed to be responsive to them; changed his schedule without notice to his supervisor; did not provide information to Human Resources in a timely manner; had poor numbers in areas such as food costs, labor costs, net operating income, restaurant sales growth and retail sales; had poor leadership skills and complaints from other managers about him; missed work often; spent too much time in the office; left the store understaffed; did not prioritize duties; did not communicate with associate managers; did not develop associate managers, and failed to take any responsibility for any of these issues either personally or in his role as General Manager, among other things. This behavior is far different from any single instance of misconduct in which any other manager is alleged to have engaged. See, e.g., Toney v. Montgomery Job Corps., 211 Fed. Appx. 816 (11th Cir. 2006) (affirming summary judgment for the employer because the quantity and quality of plaintiff's misconduct was greater than that of his comparators).

As usual, as his brief reveals, plaintiff tries to make excuses for his behavior and blame others, but plaintiff does not dispute that the problems existed. He admits that the Associate

Managers in Gardendale complained about him to Rich Alexander and that Mr. Alexander met with him about their complaints, but he alleges that the Associate Managers "did not want to work for an African American male" and they "wanted to be pampered." There is plenty of evidence that the Associate Managers had real concerns about plaintiff but there is not one bit of evidence that his race was a concern.[4] (See Alexander Aff. Ex. 3). Moreover, plaintiff does not dispute that these were the concerns expressed to Mr. Alexander. (Plt. Br., p. 9). Plaintiff also alleges that his predecessor in Gardendale was terminated for "doctoring the numbers" and that he (plaintiff) was held responsible for those numbers. Plaintiff's statement about his predecessor is not evidence and not true, and in any event, the documents (the evaluation and the bonus statement) clearly reflect that plaintiff was judged only on the months during which he worked as the General Manager. (Plt. Depo. Ex. 2; Plt. Ex. G).

Plaintiff resorts to arguing that his performance must not have been too bad because he was given a bonus in Gardendale. However, he apparently forgets that the document he submitted reflects the reasons for any bonus and the fact that he did not get a good bonus. (Plt. Ex. G). There were several categories in which a General Manager could have received bonus money, such as restaurant sales, retail sales and food costs, but plaintiff received <u>no bonus money</u> in those categories because he did not achieve those goals. (Id.). The fact that the store gave him any bonus despite confirmed, documented performance problems only negates his argument that they were "targeting him" as he repeatedly alleges in his brief.

---

[4] The concerns they expressed were things like lack of communication, lots of confusion, lack of courtesy, lack of effort and passion for the job, poor attendance and lack of follow-up. (Alexander Aff. Ex. 3). The Associate Managers did not "want to be pampered." They wanted direction, guidance and leadership. Although plaintiff disagrees with Mr. Alexander letting the Associate Managers voice these complaints to him, he does not dispute that Cracker Barrel had an Open Door Policy and that Mr. Alexander was following that policy. (Alexander Aff. Ex. 1).

Plaintiff has lots of excuses for his poor performance in Montgomery too - such as employee turnover, the market, the sales projections and the Associate Managers. He alleges that when he transferred to Montgomery, the managers there were all on final written warning, but although he asserts it, he admits he has no personal knowledge of it. (Plt. Depo., p. 252, ln. 16-23, p. 254, ln. 1-17, p. 259, ln. 8 - p. 260, ln. 6). Moreover, even according to plaintiff, the alleged warnings were not for poor performance. (Plt. Depo., p. 254, ln. 1-17). He also alleges that Mr. Alexander put a hiring freeze on the "area he managed." (Plt. Br., p. 14). If true, then how is that discriminatory towards plaintiff because he was treated no differently than the other General Managers in his "area?" In any event, plaintiff was not disciplined or fired for not hiring enough people - he was disciplined and fired, in part, for not managing the people he had, which in restaurant terms is called "labor efficiency goals." (Plt. Depo. Ex. 6).

Plaintiff also alleges that other stores had numerous guest complaints when they first opened, and he presents an unauthenticated, unexplained document called "12th Week Open" in support of his assertion. (Plt. Ex. M). This document does not even help plaintiff. It shows that his store had more guest complaints than most of the other stores. Moreover, none of these other stores were under Mr. Alexander's supervision, and there is no evidence as to whether or not the supervisor over those stores counseled or disciplined the managers. Additionally, plaintiff ignores the fact that he was not disciplined just for having guest complaints but also for not responding to guest complaints, in addition to many other shortcomings. Finally, plaintiff also alleges that the Montgomery store never performed well and closed. Again, there is no evidence that the store closed or if it did, why it closed, and plaintiff is offering supposition rather than evidence.

### 4.     Plaintiff's admission.

In spite of all his excuses and blaming, he admits that as General Manager he was the person ultimately responsible for the Gardendale and Montgomery stores. (Plt. Br., pp. 6, 12). He also admits that it was Rich Alexander's job to supervise and evaluate him and that Mr. Alexander met with him many times about his concerns. (Plt. Br. p. 10; Plt. Depo. p. 141, ln. 15 - p. 143, ln. 2, p. 146, ln. 19 - p. 147, ln. 13, p. 157, ln. 22 - p. 158, ln. 14, p. 160, ln. 19, p. 185, ln. 17 - p. 187, ln. 1-10). While plaintiff obviously disagrees with Mr. Alexander's assessment of him, that does not matter because there is no evidence whatsoever that Mr. Alexander was motivated by plaintiff's race. In fact, this allegation makes no sense when it is undisputed that Mr. Alexander invited him to apply as a General Manager and selected him over Caucasian candidates for the Gardendale store (Plt. Br., p. 7) and then replaced him with an African American after firing him from the Montgomery store (Alexander Aff. ¶ 38; Plt. Br., p. 16).[5] Plaintiff's excuses fail because there is no evidence from which a reasonable trier of fact would <u>disbelieve</u> rather than <u>disagree</u> with Cracker Barrel's proffered reason for his termination. <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1543 (11th Cir. 1997); see also <u>Spann v. Cobb County Pretrial Court Servs., LLC</u>, 206 Fed. Appx. 910 (11th Cir. 2006) ("[w]hen an employer sincerely believes an employee committed rule infractions or poor performance occurred, that belief, and thus the legitimate, non-discriminatory reason for termination, cannot be rebutted by an employee's argument that the infractions did not occur, but must be rebutted with evidence the employer's belief of the occurrences is insincere or unworthy of credence.").

---

    [5]    Plaintiff states in his brief that Mr. Patterson was not allowed to interview for the General Manager position in Gardendale. If true and Mr. Alexander did not allow Mr. Patterson to interview, this negates any argument by plaintiff that Mr. Alexander preferred Mr. Patterson over plaintiff or a Caucasian over an African-American.

### III.     Plaintiff's Retaliation Claim Should Be Dismissed.

### A.     Plaintiff cannot establish a prima facie case.

Plaintiff has not established any of the elements for a retaliation claim.  First, plaintiff alleges that he was fired for "his inquiry" into the investigation of the Tommie Patterson comment, but plaintiff has not shown that this constitutes protected activity under Title VII.  All plaintiff did was report Penny Schmidt's complaint to Employee Relations and then, according to him, ask about the status of the investigation.  This is not "protected" conduct - it is "expected" conduct of a Cracker Barrel manager who learns of a complaint.  (Alexander Aff. Ex. 1).

Moreover, there is no way that plaintiff had a "good faith, reasonable belief" that the one comment by Mr. Patterson constituted discrimination.  The Eleventh Circuit already decided this in <u>Little v. United Techs.</u>, 103 F.3d 956 (11th Cir. 1997), when it held that the expression of opposition to a single comment by one co-worker does not constitute opposition to an unlawful employment practice.  Plaintiff argues that there are "subtle differences" that distinguish his case from <u>Little</u>, but plaintiff cites no difference which would warrant a different outcome.  For example, plaintiff says that he heard Mr. Patterson say "don't blacks" where no black employee heard the derogatory comment in <u>Little</u>, but the <u>Little</u> decision was not based on who heard the comment but on whether the employer sanctioned the comment and whether the plaintiff subjectively and objectively believed the comment to be unlawful.  As in <u>Little</u>, Cracker Barrel's management counseled Mr. Patterson, and thus did not sanction the comment.  As in <u>Little</u>, plaintiff waited to report the comment indicating that he did not subjectively believe the comment to be unlawful.  Although he now alleges he was offended by the two words "don't blacks," he did not report anything until Schmidt complained to him, and he never reported he heard anything himself.  The only real difference between this case and <u>Little</u> is that the alleged

comment in this case is not objectively offensive. Mr. Patterson said "don't blacks normally have their funerals on the weekend?" In <u>Little</u>, the comment was "[n]obody runs this team but a bunch of niggers and I'm going to get rid of them." 103 F.3d at 958. Certainly, if the comment in <u>Little</u> was not unlawful, Mr. Patterson's comment is not either.

Second, plaintiff's evaluation and counselings are not adverse actions in and of themselves because a reasonable employee would not have found those actions materially adverse. <u>Burlington Northern & Santa Fe Railway Co.</u>, 126 S. Ct. 2405 (2006); <u>see also</u> <u>McAdams v. Harvey</u>, 213 Fed. Appx. 926 (11th Cir. 2007) (performance evaluation was not an adverse action) & <u>Nettles v. LSG Sky Chefs</u>, 211 Fed. Appx. 837 (11th Cir. 2006) (lower evaluation was not adverse action). So, plaintiff cannot claim any adverse action prior to his termination.

Finally, plaintiff cannot show any causal connection between his "inquiry" into the Patterson investigation and his discipline or termination. Plaintiff makes the astounding statement in his brief that before the incident, "his record was unblemished." (Plt. Br., p. 34). The record evidence, including plaintiff's own testimony, demonstrates that plaintiff was counseled about his performance several times and received a poor evaluation before Mr. Patterson made any comment. (Plt. Depo., p. 136, ln. 2 - p. 137, p. 141, ln. 15 - p. 143, ln. 2, p. 146, ln. 19 - p. 147, ln. 13, p. 157, ln. 22 - p. 158, ln. 14 - p. 160, ln. 19; Alexander Aff. ¶ 19, 22, Ex. 4; Plt. Depo. Ex. 2). Try as he might to rewrite history, plaintiff's performance as a General Manager was bad from the start and never improved. Cracker Barrel's steps to address this poor performance, both before and after the comment, do not establish causality between the comment and plaintiff's termination six months later. <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 272 (2001) ("proceeding along lines previously contemplated, though not yet definitively

determined, is no evidence whatever of causality"); Keith v. MGA, Inc., 211 Fed. Appx. 824, 827 (11th Cir. 2006) ("four month gap cannot, by itself, establish that [plaintiff] was fired because of the complaint"); Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227 (11th Cir. 2006); Higdon v. Jackson, 393 F.3d 1211 (11th Cir. 2004) (three month interval too long to create causal connection); Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 17-18 (1st Cir. 1997).

### B. Plaintiff's disagreement with his supervisor's assessment does not show pretext.

As discussed above, even if plaintiff could establish a prima facie case, he cannot prove that that his poor performance was not the real reason for his discipline and termination but that instead he was fired because he inquired into the investigation of Mr. Patterson's comment. He admits that he was told that his performance was the reason for his termination, and he does not dispute that he did not do at least some of the things he was expected to do. (Plt. Br., pp. 15-16). He also admits that as General Manager he was the person ultimately responsible for the Gardendale and Montgomery stores and that those stores had problems. (Plt. Br., pp. 6, 12). He has not shown that Cracker Barrel, and specifically Mr. Alexander and Mr. Phillips, did not honestly rely on plaintiff's poor performance to terminate him, and thus he has not established pretext. See Crawford v. City of Fairburn, 482 F.3d 1305 (11th Cir. 2007) (holding that to establish pretext, plaintiff must rebut each of the proffered reasons given by the employer); and Jones v. Dep't of Veterans Affairs and Somerby at University Park, 213 Fed. Appx. 933 (11th Cir. 2007) (holding that evidence that the defendant was mistaken is insufficient to show pretext; instead plaintiff must show that defendant did not honestly rely on its reasons).

Moreover, he has no other evidence of pretext. The timing of plaintiff's termination does not help him - he was not terminated until months after his alleged "inquiry" into the

investigation. This is true even though plaintiff admits that Cracker Barrel could have taken action against him sooner. (Plt. Depo. p. 369, ln. 13 - p. 370, ln. 10). The timing of the complaint does not help him - it came after Mr. Alexander and Ron Phillips had already recognized performance deficiencies and had counseled him about them. There are no comparators, and there are no statements indicating a retaliatory motive. Plaintiff falls far short of the standard for overcoming defendant's Motion for Summary Judgment since he has no "significant probative" evidence of pretext. Celotex Corp. v. Catratt, 477 U.S. 317 (1986);

## IV. Any Purported Harassment Claim Should Be Dismissed.

Although not clear from the Complaint or plaintiff's testimony, plaintiff now claims in his brief that he was subjected to a hostile environment. Plaintiff cannot demonstrate the elements of this claim, which include (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment was based on his race; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. Gullatte v. Westpoint Stevens, Inc., 100 F. Supp. 2d 1315, 1321-22 (M.D. Ala. 2000). Plaintiff claims that the alleged harassment was "strict scrutiny." (Plt. Br., p. 35). He claims this scrutiny was based on his race because he was the only African American General Manager that was supervised by Mr. Alexander and that no other manager was subject to the same scrutiny as him. Again, there is no evidence to back this conclusory statement. Plaintiff cannot possibly know what managers Mr. Alexander supervised over his career and what transpired between Mr. Alexander and his other managers, and plaintiff's ridiculously presumptuous statement is no evidence of race based harassment.

Plaintiff also states that the alleged harassment was severe and pervasive because it prevented him from doing his job, but he offers no evidence of any incident that kept him from performing up to par. The idea that Mr. Alexander's supervision of plaintiff, which plaintiff interprets as "scrutiny," was harassment is far afield of the parameters that the Eleventh Circuit has placed on this claim. Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999). Plaintiff does not allege any behavior that was frequent, severe, physically threatening or humiliating or that otherwise meets the Mendoza standard. 195 F.3d at 1246. Other courts have confirmed that "strict scrutiny" is not the sort of conduct that constitutes harassment. Combs-Burge v. Rumsfeld, 170 Fed. Appx. 856, 862 (4th Cir.), cert. denied, 127 S.Ct. 157 (2006) ("counseling [plaintiff] about performance deficiencies and assigning her remedial tasks to correct those deficiencies is not the type of conduct that is objectively abusive because it was a direct result of the documented shortcomings in [plaintiff's] performance"); Padilla v. Carrier Air Conditioning, 67 F. Supp. 2d 650, 660-61 (E.D. Tex. 1999).

Plaintiff does not offer any argument about how Cracker Barrel could be liable for any harassment, probably because there is no good argument. Plaintiff complains about Mr. Alexander's handling of the Patterson investigation, but the fact is that Mr. Alexander talked to the two witnesses present, determined the comment was made, counseled Mr. Patterson, and plaintiff does not allege any further incidences. Plaintiff complains that Mr. Alexander did not interview him and that Mr. Patterson did not apologize to him, and he complains about how Mr. Alexander allegedly approached the conversation with Ms. Schmidt. But none of that matters because it is undisputed that Mr. Patterson admitted to making the comment and Mr. Alexander reprimanded him for that. Plaintiff also complains that Mr. Patterson was already on final disciplinary warning for an unrelated action, but there is no evidence of that, and it does not

matter either because after Mr. Alexander took the action he deemed appropriate, plaintiff had no further incidences with Mr. Patterson. Frankly, whether plaintiff likes the action taken makes no difference because the action was prompt and appropriate. Sparks v. Regional Med. Ctr. Bd, 792 F. Supp. 735, 744 (N.D. Ala. 1992) ("[a]n employer is absolved from liability if it takes prompt and appropriate remedial action in response to the harassment"). See also Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1288 (11th Cir. Fla. 2003) ("where the substantive measures taken by the employer are sufficient to address the harassing behavior, complaints about the process under which those measures are adopted ring hollow"). Furthermore, plaintiff never complained that any of the actions taken against him were discriminatory, harassing or retaliatory until after he was terminated. A harassment claim cannot succeed under these circumstances.

### V.     Plaintiff's Claim For Damages Is Limited By After-Acquired Evidence.

Plaintiff spends a good deal of his brief trying to put his spin on his education and employment history, but the documentary evidence proving his misrepresentations remains the same. He lied about his education, and he was fired twice as a General Manager, including for misrepresenting information. (Plt. Depo. Ex. 1; RTM Records, #6; Plt. Ex. C).[6] It also remains undisputed that Cracker Barrel would not have hired him if it had known the truth about his history. (Alexander Aff. ¶ 7). Plaintiff's claims should be dismissed in their entirety, but certainly plaintiff's damages are limited by his lies.

---

[6] Plaintiff complains that the defendant never asked the plaintiff to explain the documents received from and authenticated by his former employers. To the contrary, the defendant asked the plaintiff many questions in his deposition about his education and employment history, and he continued his lies under oath.

## CONCLUSION

For all of the foregoing reasons and the reasons set out in defendant's original brief, summary judgment should be granted in the favor of the defendant Cracker Barrel.

                    s/ Ashley H. Hattaway
                    Jennifer M. Busby (BUS009)
                    Ashley H. Hattaway (HAT007)
                    Attorneys for Defendant

**OF COUNSEL**:

BURR & FORMAN LLP
3400 Wachovia Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2007, I electronically filed the foregoing Defendant's Reply Brief in Support of Its Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Byron R. Perkins
The Cochran Law Firm
505 North 20th Street, Suite 825
Birmingham, Alabama 35203

Monica A. York, Esq.
Breedlove & Lassiters, LLP
250 E Ponce de Leon Avenue
Suite 425
Decatur, GA 30030

                    s/ Ashley H. Hattaway
                    OF COUNSEL