**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| DWIGHT RODGERS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.: |
| | ) | 2:06-CV-1067-WKW-SRW |
| | ) | |
| v. | ) | |
| | ) | |
| CRACKER BARREL OLD | ) | |
| COUNTRY STORE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND HIS RESPONSE TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND**
**RESPONSE TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S**
**AFFIDAVIT**

COMES NOW Dwight Rodgers, Plaintiff herein, and files this Motion for Leave to Amend Plaintiff's Response to Defendant's Motion for Summary Judgment and Response to Defendant's Motion to Strike Plaintiff's Affidavit and states the following:

Plaintiff filed a response to Defendant's Motion for Summary Judgment and inadvertently failed to attach the Affidavit of the Plaintiff.  Plaintiff was not made aware of this until September 27, 2007 by a clerk in the Court.  Plaintiff was informed that he must file a motion for leave to amend the Response to add the affidavit. Plaintiff's did mail the original Affidavit to the Defendant's and they admit to receiving it via their Motion to Strike Plaintiff's affidavit filed on September 27, 2007.  It was not Plaintiff's intention not to attach the Affidavit and Plaintiff did not

realize until the court notified him via telephone that the affidavit had not been attached.   Plaintiff attaches it to this Motion for Leave to Amend.

In response to Defendant's Motion to Strike, Plaintiff states the following that the affidavit does fit the requirements of rule 56(e) for an affidavit; it is based on the personal knowledge of the Plaintiff and in fact is written in the first person and is sworn to and stated by the Plaintiff; it does not contain inadmissable hearsay again the Plaintiff stated what was his personal knowledge; it does not attempt to change Plaintiff's previous deposition testimony, it clarifies areas that were clouded by Defendant's brief and avers matters that are in dispute; it does not contradict the undisputed record, because the records is in dispute; all statements are based on the personal knowledge of the Plaintiff.

<u>CONCLUSION</u>

_____For the foregoing reason Plaintiff request that his motion for leave to amend his Response to Defendant's Motion for Summary Judgment be granted.

Respectfully submitted this 28 th day of September, 2007.

/s/Byron Perkins
State Bar No. ASB - 0183 - N75B
Attorney for Plaintiff

The Cochran Firm
505 North 20th Street - Suite 825
Birmingham, Alabama 35203
(205) 244-1115
(205) 244-1171 fax
email: <u>bperkins@CochranFirm.com</u>

                                           s/Monica A. York
                                           Monica A. York
                                           State Bar No. 781153
                                           Attorney for Plaintiff

ATTORNEYS
BREEDLOVE & LASSITER, LLP
250 East Ponce de Leon Avenue
Suite 425
Decatur, Georgia 30030
(404) 377-5512 (telephone)
(404) 377-5515 (facsimile)
email: myork@breedloveandlassiter.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DWIGHT RODGERS,                    )
                                   )
         Plaintiff,                )        CIVIL ACTION NO.:
                                   )        2:06-CV-1067-WKW-SRW
                                   )
v.                                 )
                                   )
CRACKER BARREL OLD                 )
COUNTRY STORE, INC.,               )
                                   )
         Defendant.                )

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2007, I electronically filed

PLAINTIFF'S MOTION FOR LEAVE TO AMEND HIS RESPONSE TO

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO

DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S AFFIDAVIT with the Clerk

of Court using the CM/ECF system which will automatically send email notification

of such filing to the following attorneys of record:

Jennifer Busby
Ashley H. Hattaway
Burr & Forman LLP
3400 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203

Respectfully submitted,

 /s/Byron Perkins
Byron Perkins
State Bar No. ASB - 0183 - N75B
Attorney for Plaintiff

The Cochran Firm
505 North 20th Street - Suite 825
Birmingham, Alabama 35203
(205) 244-1115
(205) 244-1171 fax
email: bperkins@CochranFirm.com

s/Monica A. York
Monica A. York
State Bar No. 781153
Attorney for Plaintiff

ATTORNEYS
BREEDLOVE & LASSITER, LLP
250 East Ponce de Leon Avenue
Suite 425
Decatur, Georgia 30030
(404) 377-5512 (telephone)
(404) 377-5515 (facsimile)
email: myork@breedloveandlassiter.com

# PLAINTIFF'S
# AFFIDAVIT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

DWIGHT RODGERS,           )
                               )
       Plaintiff,           )    CIVIL ACTION NO.:
                               )    2:06-CV-1067-WKW-SRW
                               )
v.                            )
                               )
CRACKER BARREL OLD     )
COUNTRY STORE, INC.,      )
                               )
       Defendant.      )

## AFFIDAVIT OF DWIGHT RODGERS

Dwight Rodgers appeared before me the undersigned officer, duly authorized to administer oaths in the State of Georgia and having been duly sworn states the following:

1.

I, Dwight Rodgers, an African American male, was employed by Cracker Barrel, Cracker Barrel Old Country Store, Inc., from July 22, 2002, to an effective date of termination of September 3, 2005.

2.

I began my employment with Cracker Barrel as a manager and was promoted to General Manager in September 2004.

-1-

## Cracker Barrel Is An Equal Opportunity Employer

3.

I did not witness the enforcement of the published policies on equal employment opportunity, harassment, retaliation and open door policies.

4.

I know that employees could utilize a toll free Hotline or advise a Manager, District Manager when they have been subjected to discrimination, harassment or retaliation.

5.

I was trained on Cracker Barrel policy, kept copies of them and abided by them.

## I Was Hired Based On A False Employment History

6.

I did not forward my resume to a recruiter for Cracker Barrel.

7.

My resume was forwarded via monster.com, a search engine which forwards resumes to recruiters that fit criteria the recruiter is looking for.

8.

I explained to the recruiter for Cracker Barrel that I was no longer working at

RTM that I had resigned and under what circumstances.

9.

Cracker Barrel conducted a background check, and RTM explained the circumstances surrounding my departure.

10.

The explanation on the background check clearly states that I was "following company policy and suspended a team member for a few days". I was not terminated for violation of company policy.

11.

I was contact by RTM Human Resources after being told to take time off and I did not like the response or backing I received and decided to terminate my employment.

12.

I was hired by Cracker Barrel into its Management-In-Training Program based upon my resume, employment history, and interview with the Cracker Barrel all which qualified me for the position.

13.

My resume is not false and my resume on monster.com does not state I have a bachelor's degree.

14.

I did not lie on my resume about my education or to Cracker Barrel.  My resume illustrates that I was one half year away from completing the degree in July of 2002 on page 3, as does my response to discovery requests.

15.

I relayed to the recruiter that I interviewed with, that I was one half year from completing my degree in July.

16.

I worked at Bojangles as a Training Unit Director.  It was my job in this position to learn the operations of the company and provide hands-on training to employees of the company.

17.

I did not receive personal disciplinary reports. Each disciplinary report was a reflection of the store that I was tasked with training, which is reflected by the Employee Change Status forms, demonstrating the change in location.  I was told that these had to be documented but they would remain at those location and not reflect on my employment history.  The same manager signed each one but I was not counseled for performance problems because he knew they were a reflection of the various stores.

18.

I was never suspended from Bojangles. All of the disciplinary reports have three sections that included checkoff boxes, labeled "Description of Incident," "Disciplinary Action Taken" and "Consequence of Repeat Violations." The disciplinary action taken in each instance was not suspension which was one of the categories that could have been checked, just warning.

19.

I was seeking another position in response to questions surrounding his leaving Bojangles. I submitted my resignation on July 22, 2001 because of practices of the franchisee and sought other employment. I was not terminated for making misrepresentations and was eligible for rehire after speaking with Linda Wells, a company representative.

20.

Cracker Barrel was aware of my educational and employment history. I was interviewed and a background check was conducted by Cracker Barrel prior to commencement of employment and I explained my entire work history to Cracker Barrel.

## Plaintiff's Employment History With Cracker Barrel

### 21.

I completed employment training in October, 2002 and became an Associate Manager in the Athens, Georgia store. I was promoted to the position of Senior Associate Manager in July, 2004. However, I was not aware of how the promotion process took place in regards to approval by the Regional Vice President or whether the District Manager recommended me.

### 22.

I worked under Ron Phillips who was the Regional Vice President during my employment with Cracker Barrel.

### 23.

As General Manager I was responsible for all areas of operation, the performance of the store and the associates. As General Manager I would assign specific tasks to the Associate Managers such as managing food costs or scheduling employees and retained ultimate responsibility for making sure that the store performed up to expectations.

### 24.

I was evaluated by the General Manager, Tom Speziale. On the January 7, 2004 evaluation I received an Overall Performance Rating of 3 but I did not receive all 3s,

I had three 4s and two 5s. However, the January 7, 2004 evaluation was not the last Evaluation that I received from Tom Speziale. I received another evaluation by Mr. Speziale on July 30, 2004. By the July 30, 2004 evaluation on page 16 of 17 Mr. Speziale stated in the improvements from last Evaluation section, " I have not worked a great deal with Dwight over the past 6 months. I have however had several discussions and meetings with Dwight. He has grown. I have ascertained this by the content and questions fielded. In addition, he demonstrates strengths in Leading and Development through communication, providing feedback and uses situational leadership skills. He also has strengths in building guest and maintaining guest relations. Dwight exhibits strengths in Planning and Supervising operations and Safety and Security and Sanitation." On page 9 of the evaluation Mr. Speziale described me as a quality individual who has worked to overcome the operational obstacles. And finally he described me as an Excellent communicator and motivator. "Should do well as GM."

25.

I was promoted to GM on September 4, 2004. I did not obtain the position in Georgia because Cracker Barrel had already hired another individual but was invited to apply for the Gardendale Store. I did in fact interview for the position and was hired based on my qualifications.

-7-

26.

I am not aware whether I was hired over Caucasian candidates and the affidavit of Rich Alexander is self serving.

## Plaintiff's Performance Problems In Gardendale

## Plaintiff Performed Poorly In Objective Financial Areas

27.

I received bonus' during my tenure despite the financial areas at the Gardendale store and despite my predecessor's termination for doctoring the numbers. The numbers that I was held too included those that had been misrepresented by my predecessor which in fact I was not responsible for since I was not at the store at that time.

28.

I as GM assessed the skills of the individuals that reported to work for me, which was part of my role as GM. I assessed that despite the number of years at Cracker Barrel, my staff did not perform up to Cracker Barrel standards. The Gardendale team had been in place there for some time but they lacked experience and ability.

29.

My Senior Associate Manager, Tommie Patterson was experienced however, he was on final written warning for his knowledge and participation with my predecessor

and was not allowed to interview for the GM position after several requests to be interviewed.

30.

I was ultimately responsible for ensuring the store met its objectives. I was limited in this endeavor after the investigation took place, by not being allowed to discipline my employees.

## Plaintiff Also Was A Poor Leader

31.

I did not fail at leading the management team. I stated that there were changes made by me that were in the best interest of the company which were not welcome by the employees. The Team simply had problems and did not want to work for an African American male, specifically Tommie Paterson. The managers logged complaints against me because they did not want to be accountable to me and created turmoil which made it difficult to manage the team. I denied all the allegations logged against me.

32.

I was not made aware of an upcoming meeting, prior to it being held. He was not told to come to the meeting which was uncommon for the company. As I stated this was an unusual meeting. These issues were brought to my attention by Rich

Alexander but since I was not at the meeting or invited I cannot state that these were the concerns expressed. I met with Rich Alexander to discuss the meeting.    Mr. Alexander started the meeting with "this is not a witch hunt."

## Plaintiff Supervisor Counseled Him But He Did Not Respond

33.

I was being coached for what my associates believed were performance problems not for actual performance problems. I felt that the employees wanted to be pampered and since I had not done that, they complained about my supervisory skills.

34.

I am always willing to take criticism and to make improvements. I met with Mr. Alexander numerous times to discuss the behaviors of my staff. There tended to be a great deal of pushback by my staff. The meetings tended to focus on the concerns of the staff.

35.

I received a negative evaluation, but I also received bonus' based on performance. I vehemently disagreed with the statements made by Rich Alexander and the motivation for them.

36.

I did followed the advice of Mr. Alexander and put together a plan to further

improve my performance. I always took full responsibility for my actions. I did not set out not prove that my Associate Managers were at fault.

37.

I administered an evaluation with similar results for Tommie Patterson based Rich Alexander's assessment of the store. No action was ever taken against Mr. Patterson.

38.

I disagreed with the decision of Rich Alexander to meet with the managers without notifying me. This was uncommon and had never happened to other managers under Mr. Alexander's supervision. I questioned the other managers and Ron Phillips who verified that no other managers had been subjected to this type treatment. The associate managers were allowed to go to Mr. Alexander with problems and were never directed to see me, their immediate supervisor to work it out, thereby undermining my ability to manage my staff.

39.

I resolved issues with those team members that wanted too worked with me. I noticed an improvement in the staff but as General manager and it was my responsibility to run the store including the staff despite what they felt about me.

**Plaintiff's Transfer To Montgomery And His Continued Poor Performance**

-11-

40.

I received one evaluation and a write up during my tenure at the Gardendale

Store. My conversations with my managers do not point to poor performance. I was

simply being targeted by Rich Alexander. I performed at a brand new store with such

high employee turnover. I lost ninety-four (94) employees from June 14, 2005 to

August 1, 2005, many left without giving notice or no call/no show. The store did not

perform well and still does not to this day. The second unit in Montgomery that is less

than 6 miles away was recently closed because of poor sales. Ultimately the

performance of the store was my responsibility, however, high turnover and the market

played a major factor in sales and store performance, not my managerial skill.

41.

I arrived to take over a staff that recently had their General Manager fired and

others under a disciplinary cloud. I believed that my management staff was not suited

for that store since most were transferred in on final written warning for behaviors

issues. This Store also had all new employees since it was a new store. Associate

Manager Carlos Browing was on final written warning when transferred to the new

unit; Associate Ashley Moore was on final written when transferred to the new unit;

Associate Brian Thomsen was on final written warning when transferred and Associate

Richard Peek was under investigation when transferred to new unit. Mr. Alexander

knew this when he placed me in the unit. I was set up to finally fail.

42.

I was provide with a Store Opening Supervisor and a Retail Opening Supervisor but they only remain with the store for two weeks and then they moved to the next store. After only two weeks in the store Mr. Alexander again alleged irregularities in order to discipline me. However he presented them all in one memo, covering a time period and had not brought each of these issues up as they were alleged to have occurred. I asked to meet with Ron Phillips to discuss the disparate way I was being treated by Rich Alexander and to address how sales could not be met due to a hiring freeze that Rich Alexander placed on the area he managed.

43.

I made no excuses for my behavior and explained what I perceived as misrepresentations made by Rich Alexander. I explained that I was not spending too much time in the office and that complaint had not been made against me as was alleged by Alexander. I explained that I did not call an associate in so that I could run a personal errand as alleged. In fact I indicated that I communicated with Mr. Alexander the whole time about the situation. I denied that I failed to inform Mr. Alexander of a schedule changed.

44.

The policy of Cracker Barrel is - "you try to address the issues as they come up providing an opportunity for counseling instead of just documenting two weeks of alleged infractions."

45.

I was assisted by only one manager being brought in that was Mark from the Cullman Unit. I was being coached by Mr. Phillips and Mr. Alexander. What was not acknowledged was the high turn over which contributed to customer complaints.

46.

I did not blame my Associate Managers. I was concerned that they were not following my direction, superseding my authority and making the team difficult to manage.

47.

I was given a final warning that brought up concerns, however as I stated this warning did not address problems with a brand new restaurant, with all brand new employees that opened with another Cracker barrel only 6 miles away. Projected sales were not met due to Cracker Barrel's projections. Also I stated that 29 twenty-nine guest complaints for a new store opening is not unusual for a brand new store. All new store openings had the same kind of numbers for guest complaints. In fact the Pinellas-Clearawater store had 45 guest complaint in its 12th week open. I also was

-14-

not able to staff the store properly because Mr. Alexander put a freeze on staff hiring, which contributed to labor goals not being met.

### Plaintiff's Termination

48.

Cracker Barrel stated that I was terminated because my performance continued to fall below expectations of General Manager. I did not miss deadlines. At this point Mr. Alexander used every excuse to discipline me that he could muster. I was not expected to be on any conference call while I was moving because the labor manager was on the call.

49.

I interviewed with Ruby Tuesdays, a Mr. James Albi and truthfully informed him of the termination and the EEOC complaint.

### Plaintiff's Allegations Regarding The Tommie Patterson Incident

50.

My inquiry into the comment by Tommie Patterson resulted in numerous disciplinary actions leading to my termination. I had two of his aunts die, during my employment with Cracker Barrel. I in fact had more than one relative pass away and Cracker Barrel's callous statement does not make it less truthful.

51.

-15-

I called the store, Tommie Paterson answered the phone and I explained my situation. Mr. Patterson's later explanation about what he believed about African - Americans did not make his statement any less offensive. Patterson statement was not responsive to Ms. Schmidt question and was stated because he felt comfortable that he was in a situation where only White persons were within hearing range.

52.

Patterson's concern about having to work an extra shift and not that I had a death in the family is an example of the lack of team concern for me. In fact as per usual policy no flowers were sent to me by the company, instead some volunteers from my store sent them on their own behalf.

53.

Ms. Schmidt stated that I did not stand a chance at the store. She stated that the managers were constantly talking about not wanting to work with me and that a number of complaints came from a white male named Bill who worked for Georgia power and did not like me because I was black. This customer would come and check the power for the store but when he was not working he expected to be able to walk around the store in areas that he was not allowed to. I stopped this and this caused the guest to complain.

54.

Mr. Alexander did not investigate the complaint. Patterson was on final written warning but was told that future comments could cost him his job. Patterson did not apologize to me, he was aware that I knew about the comment because Ms. Schmidt reported it to me, and Alexander did not recommend that he apologize to me, his manager.

55.

I complained that the investigation was not properly addressed because it took more than the 10 days required. I was not informed of the outcome and no one thought to recommend that Patterson apologize to the person the comment was directed at. I heard a portion of the comment and was given all of the details prior to reporting it. I inquired into the status of the complaint on at least six separate occasions. When I inquired into the status, I did not complain about the remedial action taken after I received Alexander's comment "don't forget who you work for" so I backed off.

**Plaintiff Did Not Report Discrimination Or Retaliation To Cracker Barrel**

56.

I was being targeted. I complained of actions being taken against him. I did not lie to EEOC about not having performance issues, I believed I was being targeted by Cracker Barrel with unjustified disciplinary actions.

57.

-17-

I was treated differently. My comments about the other managers with performance issues are not hearsay since I had information from the manager themselves when they had performance issues and Cracker Barrel has not proffered evidence to dispute this.

58.

I received my Notice of Right to Sue and my Complaint was brought within 90 days of my receipt thereof.

59.

I filed my lawsuit in the United States District Court, Middle District, of Alabama.

60.

I filed charges of Title VII discrimination and retaliation violations with the Equal Employment Opportunity Commission within 180 days of the last of a continuing stream of discriminatory acts and retaliation complained of herein.

FURTHER AFFIANT SAYETH NOT

-18-

_____
Dwight Rodgers

Sworn to and subscribed before
Me this 27 day of August, 2007.

Monica A. [signature]

-19-