IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DWIGHT RODGERS, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO: |
| | ) | 2:06-CV-1067-WKW-SRW |
| CRACKER BARREL OLD | ) | |
| COUNTRY STORE, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

## DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S AFFIDAVIT

COMES NOW Defendant, Cracker Barrel Old Country Store, Inc. ("Cracker Barrel"), and hereby moves the Court to strike plaintiff's "Affidavit" submitted in opposition to Cracker Barrel's motion for summary judgment in accordance with the Court's order dated October 9, 2007. Cracker Barrel previously filed a Motion to Strike based on the grounds that the affidavit was untimely and preserving other objections to the affidavit. The Court denied that motion but by order allowed Cracker Barrel to file more specific objections to the affidavit. As grounds for this motion, Cracker Barrel states as follows:

## I. INTRODUCTION

Plaintiff apparently knew that his deposition testimony, as misleading as it is, was insufficient to create any genuine issue of material fact. Thus, plaintiff resorted to attempting to declare in affidavit form different testimony. However, plaintiff's "Affidavit" is legally deficient. It does not meet the requirements of an affidavit or a declaration under 28 U.S.C. § 1746, and therefore cannot be considered for summary judgment purposes. In addition, most of the content of the document is inadmissible because it is: (i) not based on personal knowledge; (ii) inadmissible hearsay; (iii) contradictory to plaintiff's previous sworn testimony; (iv)

1599595 v1

contradictory to the undisputed facts on record; and (v) full of conclusory allegations.  For these reasons, which are more fully discussed below, plaintiff's "Affidavit" should be stricken.

## II.  ARGUMENT

**A.      Plaintiff's "Affidavit" Should Be Stricken In Its Entirety Because It Does Not Comply With Rule 56(e)**

Plaintiff's "Affidavit" should be stricken in its entirety because it is neither sealed (and is thus not an affidavit) nor in compliance with 28 U.S.C. § 1746.  The "Affidavit" is therefore inadmissible hearsay under Rule 56(e), and may not be used by plaintiff in an attempt to avoid summary judgment.

Despite its title, the document plaintiff submitted in opposition to summary judgment is not an affidavit.  Plaintiff's counsel apparently made an attempt to notarize this document herself and make it an affidavit; however, it is missing any sort of notarial seal.  Thus, the document is inadmissible hearsay and should be stricken.  See Bryant v. Orlando Sentinel Communications Co., 2007 WL 1796258, at *5 (M.D. Fla. Jun. 20, 2007); Ghazi v. Fiserv, Inc., 904 F. Supp. 823, 826-27 (N.D. Ill. 1995); Flores v. Chicago Transit Auth., 2006 WL 2868904, at *1 (N.D. Ill. Oct. 4, 2006); see also Haston v. General Motors Corp., 678 So. 2d 1164, 1166 (Ala. Civ. App. 1996) (failure of an out of state attorney to affix her seal of office rendered the affidavit void and inadmissible for summary judgment purposes).

Nor does it comply with 28 U.S.C. § 1746, which authorizes unsworn declarations in certain circumstances.  Specifically, it lacks any language to the effect that plaintiff's testimony was given under penalty of perjury, as required by Section 1746.  Thus, the document is inadmissible and should be stricken.  See Walker v. Thames, 2001 WL 394911, at *1 (S.D. Ala. Mar. 30, 2001); Ghazi, 904 F. Supp. at 827; Flores, 2006 WL 2868904, at *1.

1599595 v1                                                2

**B.**    <u>**Parts of Plaintiff's "Affidavit" Should Be Stricken Because It Is Not Based On Personal Knowledge**</u>

Parts of plaintiff's "Affidavit" should be stricken for the additional reason that it is not based on personal knowledge.  The Federal Rules of Civil Procedure state that an affidavit submitted in opposition to summary judgment "shall be made on personal knowledge." Fed. R. Civ. P. 56(e).  Numerous paragraphs in plaintiff's "Affidavit" do not comply with this Rule. Some examples are set forth below[1]:

> 20.    Cracker Barrel was aware of my educational and employment history….
>
> ***
>
> 27.    I received bonus' [sic] during my tenure despite the financial areas at the Gardendale store and despite my predecessor's termination for doctoring the numbers.  The numbers that I was held too [sic] included those that had been misrepresented by my predecessor which in fact I was not responsible for since I was not at the store at that time.
>
> ***
>
> 29.    My Senior Associate Manager, Tommie Patterson was experienced however, he was on final written warning for his knowledge and participation with my predecessor and was not allowed to interview for the GM position after several requests to be interviewed.
>
> ***
>
> 31.    I did not fail at leading the management team.  I stated that there were changes by me that were in the best interest of the company which were not welcome by the employees.  The Team simply had problems and did not want to work for an African American male, specifically Tommie Patterson.  The managers lodged complaints against me because they did not want to be accountable to me and created turmoil which made it difficult to manage the team.  I denied all the allegations logged against me.

---

[1]    The numerical references are to the numbered paragraphs of plaintiff's "Affidavit."

32.    I was not made aware of the upcoming meeting, prior to it being held.  He was not told to come to the meeting which was uncommon for the company.  As I stated this was an unusual meeting.

33.    I was being coached for what my associates believed were performance problems not for actual performance problems.  I felt that the employees wanted to be pampered and since I had not done that, they complained about my supervisory skills.

***

37.    I administered an evaluation with similar results for Tommie Patterson based [sic] Rich Alexander's assessment of the store.  No action was ever taken against Mr. Patterson.

***

40.    []  I was simply being targeted by Rich Alexander….  The store did not perform well and still does not to this day.  The second unit in Montgomery that is less than 6 miles away was recently closed because of poor sales….

41.    I arrived to take over a staff that recently had their General Manager fired and others under a disciplinary cloud.  I believed that my management staff was not suited for that store since most were transferred in on final written warning for behaviors [sic] issues.  This Store also had all new employees since it was a new store.  Associate Manager Carlos Browning was on final written warning when transferred to the new unit; Associate Ashley Moore was on final written when transferred to the new unit; Associate Brian Thomsen was on final written warning when transferred and Associate Richard Peek was under investigation when transferred to [sic] new unit.  Mr. Alexander knew this when he placed me in the unit….

***

44.    The policy of Cracker Barrel is - "you try to address the issues as they come up providing an opportunity for counseling instead of just documenting two weeks of alleged infractions."

***

47.    I was given a final warning that brought up concerns, however as I stated this warning did not address problems with a brand new restaurant, with all brand new employees that opened with another Cracker Barrel only 6 miles away.  Projected sales

were not met due to Cracker Barrel's projections.  Also I stated that 29 twenty-nine guest complaints for a new store opening is not unusual for a brand new store.  All new store openings had the same kind of numbers for guest complaints.  In fact the Pinellas-Clearwater store had 45 guest complaints in its 12th week open.  I also was not able to staff the store properly because Mr. Alexander put a freeze on staff hiring, which contributed to labor goals not being met.

\*\*\*

51.    I called the store, Tommie Patterson answered the phone and I explained my situation.  Mr. Patterson's later explanation about what he believed about African-Americans did not make the statement any less offensive.  Patterson [sic] statement was not responsive to Ms. Schmidt [sic] questions and was stated because he felt comfortable that he was in a situation where only White persons were within hearing range.

\*\*\*

54.    Mr. Alexander did not investigate the complaint.  Patterson was on final written warning but was told that future comments would cost him his job.  Patterson did not apologize to me, he was aware that I knew about the comment because Ms. Schmidt reported it to me, and Alexander did not recommend that he apologize to me, his manager.

(Pltf. Aff. ¶¶ 20, 27, 29, 31-33, 37, 40-41, 44, 47, 51, 54).  Because these allegations are not based on personal knowledge, they are due to be stricken.

**C.    Parts of Plaintiff's "Affidavit" Should Be Stricken Because It Contains Inadmissible Hearsay**

Other parts of plaintiff's "Affidavit" should be stricken because it contains inadmissible hearsay.  As the Eleventh Circuit has recognized, "inadmissible hearsay [generally] cannot be considered on a motion for summary judgment."  Macuba v. Deboer, 193 F.3d 1316, 1322-23 (11th Cir. 1999).  Despite this rule, plaintiff's "Affidavit" is replete with inadmissible hearsay.  Some examples are below (in some cases, more than the hearsay statement is included to show the context of the hearsay statement):

9.       Cracker Barrel conducted a background check, and RTM explained the circumstances surrounding my departure.

\*\*\*

11.      I was contacted by Human Resources after being told to take time off and I did not like the response or backing I received and decided to terminate my employment.

\*\*\*

38.      I disagreed with the decision of Rich Alexander to meet with the managers without notifying me.  This was uncommon and had never happened to other managers under Mr. Alexander's supervision.  I questioned the other managers and Ron Phillips who verified that no other managers had been subjected to this type treatment….

\*\*\*

53.      Ms. Schmidt stated that I did not have a chance at the store. She stated that the managers were constantly talking about not wanting to work with me and that a number of complaints came from a white male named Bill who worked for Georgia Power and did not like me because I was black….

(Pltf. Aff. ¶¶ 9, 11, 38, 53).  These allegations contain inadmissible hearsay, and should not be

considered on summary judgment.

**D.      Parts of Plaintiff's "Affidavit" Should Be Stricken Because It Contradicts His Previous Deposition Testimony And The Undisputed Record Evidence**

Plaintiff's "Affidavit" should also be stricken to the extent it is an attempt to change

plaintiff's previous deposition testimony.  It is well-established that a party cannot create an issue

of fact by submitting an affidavit that "merely contradicts, without explanation, previously given

sworn testimony." Van T. Junkins & Assocs. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir.

1984); Lester v. Compass Bank, 1997 WL 151782, at \*4 (N.D. Ala. Feb. 10 1997).  This,

however, is exactly what plaintiff has attempted to do.  Below is an example of how plaintiff has

improperly tried to change his previous testimony.

When asked at his deposition to explain the circumstances surrounding his hiring at

Cracker Barrel, plaintiff testified as follows:

> Q:    All right.  So you had your resume posted at monster.com,
> and Ted Moore [a Cracker Barrel recruiter] contacted you?
>
> A:    Correct.
>
> ***
>
> Q:    All right.  Well, what did he say when he called you?
>
> A:    He asked if I would meet him.  He was in the Atlanta
> market, and I drove down on my off day and met with him.
>
> Q:    **So you were still working when you met him**?
>
> A:    **That's correct**.
>
> ***
>
> Q:    Okay.  Let me get back on my notes and get this straight.
> Okay.  So you do not leave Bojangles because **you were recruited
> by Cracker Barrel**.  We know that is not correct.
>
> A:    **That's why I left RTM**.

(Pltf. Depo., p. 49) (emphasis added).  Despite his unambiguous deposition testimony, plaintiff

now claims the following about his hiring at Cracker Barrel:

> 8.    My resume was forwarded via monster.com, a search
> engine which forwards resumes to recruiters that fit criteria the
> recruiter is looking for.
>
> 9.    **I explained to the recruiter for Cracker Barrel that I
> was no longer working at RTM** that I had resigned and under
> what circumstances.
>
> ***
>
> 11.    I was contact [sic] by Human Resources after being told to
> take time off and **I did not like the response or backing I
> received and decided to terminate my employment**.

(Pltf. Aff. ¶¶ 8-9, 11) (emphasis added).  In other words, plaintiff claimed in his deposition that he was working for RTM at the time he interviewed with Cracker Barrel, and that he left his employment at RTM because Cracker Barrel had recruited him; then, in his "Affidavit," plaintiff completely changed his story, claiming that he was not working at RTM when he interviewed with Cracker Barrel, and that he left RTM because he did not like the "response or backing" he was getting there.  The statements in plaintiff's "Affidavit" directly contradict his previous sworn testimony (and are untrue because he was fired), and should be stricken.

Numerous other allegations in plaintiff's "Affidavit" are contradicted by the undisputed record evidence.  Apparently, plaintiff thinks the Court must believe anything he puts in the "Affidavit," no matter how outrageous.  Plaintiff is incorrect.  To survive summary judgment, a plaintiff must present "evidence on which the jury could reasonably find for [him]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (emphasis added).  Where, as here, "the plaintiff relies almost exclusively on his own testimony," the Court must make an in-depth assessment of the plaintiff's account of the facts.  Williams v. Rich, 2006 WL 2534417, *4 (S.D. Ga. Aug. 30, 2006) (quoting Jeffreys v. City of New York, 426 F.3d 549, 554 (2nd Cir. 2005)).  When a plaintiff "relies on his own self-serving allegations, the Court properly considers whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'"  Id.  Further, the Court views the evidence in favor of the non-movant "only to the extent that it would be reasonable for a jury to resolve the factual issues that way," and a plaintiff may not defeat summary judgment merely with "discredited testimony."  Id. (citing Anderson, 477 U.S. at 252); Evans v. Stephens, 407 F.3d 1272, 1283-84 (11th Cir. 2005) (Carnes, J., concurring specially).  In this case, a reasonable juror would have to suspend disbelief in order to believe many of the implausible and contradictory allegations in plaintiff's "Affidavit."

Perhaps the most egregious example of plaintiff's implausible and contradictory allegations involves the discipline he received from Bojangles, one of his former employers. Specifically, records subpoenaed from Bojangles unambiguously show that plaintiff was disciplined numerous times, and was ultimately terminated. (See Ex. E to Cracker Barrel's Evidentiary Submission in Support of Summary Judgment; Ex. C to Plaintiff's Evidentiary Submission in Opposition to Summary Judgment, doc 000031). Plaintiff's unmistakable signature appears at the bottom of each of the discipline reports. One discipline report, signed by "Dwight Rogers," clearly states that "Dwight failed to follow procedures…." (See Ex. E to Cracker Barrel's Evidentiary Submission in Support of Summary Judgment, doc 000039). Another report, which also identifies plaintiff by name, unambiguously states that plaintiff was being terminated for "misrepresenting food cost expenditures." (See Ex. C to Plaintiff's Evidentiary Submission in Opposition to Summary Judgment, doc 000031). Incredibly, and despite this documentary evidence, plaintiff in his "Affidavit" now claims the following:

> 17.    **I did not receive personal disciplinary reports**. Each disciplinary report was a reflection of the store that I was tasked with training, which is reflected by the Employee Status forms, demonstrating the change in location. I was told that these had to be documented but they would remain at those location [sic] and not reflect on my employment history. The same manager signed each one but **I was not counseled for performance problems** because he knew they were a reflection of the various stores.
>
> ***
>
> 19.    I was seeking another position in response to questions surrounding his [sic] leaving Bojangles. I submitted my resignation in July 22, 2001 because of practices of the franchisee and sought other employment. **I was not terminated for making misrepresentations**….

(Pltf. Aff. ¶¶ 17, 19). This "Affidavit" testimony is clearly a fabrication, and should be disregarded for purposes of summary judgment.

An additional example of plaintiff's blatantly contradicting the undisputed evidence involves his termination from RTM, another former employer. The documents that RTM produced in response to a subpoena state that plaintiff was terminated for "violation of company policy." (See Ex. C to Cracker Barrel's Evidentiary Submission in Support of Summary Judgment). Nonetheless, plaintiff claims as follows in his "Affidavit:"

> 8.    I explained to the recruiter at Cracker Barrel that **I was no longer working at RTM that I had resigned** and under what circumstances.

(Pltf. Aff. ¶¶ 8) (emphasis added).

Plaintiff also makes a false claim about his employment at Ruby Tuesday's, which occurred after he was terminated from Cracker Barrel. Whereas plaintiff's application with Ruby Tuesday's unequivocally states that he left Cracker Barrel for "quality of life" issues (see Ex. F to Cracker Barrel's Evidentiary Submission in Support of Summary Judgment, doc 000050), plaintiff states the following in his "Affidavit:"

> 49.    I interviewed with Ruby Tuesdays, a Mr. James Albi and truthfully informed him of the **termination** [from Cracker Barrel] and the EEOC complaint.

(Pltf. Aff. ¶ 49). Again, one would have to "suspend disbelief" to buy plaintiff's assertion about his prior employment.

In sum, plaintiff should not be allowed to contradict his previous sworn testimony and the undisputed documentary evidence with last-minute, self-serving testimony in the form of this "Affidavit." The contradictory portions of plaintiff's "Affidavit" should therefore be stricken.

**E.    Parts of Plaintiff's "Affidavit" Should Be Stricken Because It Contains Conclusory Arguments**

Affidavits that set forth conclusory opinions and arguments rather than statements of fact based on personal knowledge are improper. Homebingo Network, Inc. v. Chayevsky, 428 F.

Supp. 2d 1232, 1239 (S.D. Ala. 2006); <u>Hawthorne v. Sears Termite & Pest Control, Inc.</u>, 309 F.

Supp. 2d 1318, 1334-35 (M.D. Ala. 2003).  Numerous allegations in plaintiff's "Affidavit" are

nothing more than conclusory arguments, and are made by plaintiff only because he has no

specific facts to support his claims.  Such allegations are therefore due to be stricken.  Some of

the most glaring examples of plaintiff's conclusory arguments are set forth below:

> 36.    I did followed [sic] the advice of Mr. Alexander and put together a plan to further improve my performance.  I always took full responsibility for my actions.  I did not set out to prove that my Associate Managers were at fault.

> \*\*\*

> 43.    I made no excuses for my behavior….

> \*\*\*

> 45.    []  What was not acknowledged was the high turn over which contributed to customer complaints.

> 46.    I did not blame my Associate Managers.  I was concerned that they were not following my direction, superseding my authority and making the team difficult to manage.

> \*\*\*

> 48.    Cracker Barrel stated that I was terminated because my performance continued to fall below expectations of General Manager….  At this point Mr. Alexander used every excuse to discipline me that he could muster….

> \*\*\*

> 50.    My inquiry into the comment by Tommie Patterson resulted in numerous disciplinary actions leading to my termination….

> \*\*\*

> 52.    Patterson's concern about having to work an extra shift and not that I had a death in the family is an example of the lack of team concern for me….

> \*\*\*

11

56.     I was being targeted….

(Pltf. Aff. ¶¶ 36, 43, 45-46, 48, 50, 52, 56).

These Paragraphs of plaintiff's "Affidavit" are nothing more than improper conclusory opinions, and should be stricken.

## III.  CONCLUSION

Plaintiff's "Affidavit" is legally deficient and not properly before the Court.  Additionally, instead of evidence, the "Affidavit" contains suppositions, opinions, unfounded conclusions, fabrications, and inadmissible hearsay.  For all these reasons, Cracker Barrel respectfully requests that the Court enter an appropriate order striking plaintiff's "Affidavit" from the record in this case.

s/ Ashley H. Hattaway                   
Jennifer M. Busby (BUS009)
Ashley H. Hattaway (HAT007)
*Attorneys for Cracker Barrel Old Country Store, Inc.*

**OF COUNSEL**:

BURR & FORMAN LLP
3400 Wachovia Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that on October 12, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Byron R. Perkins
The Cochran Law Firm
505 North 20th Street, Suite 825
Birmingham, Alabama 35203

Monica A. York, Esq.
Breedlove & Lassiters, LLP
250 E Ponce de Leon Avenue
Suite 425
Decatur, GA 30030

                                        s/ Ashley H. Hattaway_____
                                        OF COUNSEL